**William LOWARY, et al., Plaintiffs,**

v.

**LEXINGTON LOCAL BOARD OF EDUCATION, et al., Defendants.**

**No. C86–1536A.**

United States District Court, N.D. Ohio, E.D.

March 2, 1988.

Glenn M. Taubman, Rossie D. Alston, Jr., Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., James Calhoun, Calhoun, Benzin, Kademenos & Heichel, Mansfield, Ohio, for plaintiffs.

Alexander M. Andrews, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for all other defendants.

Ira Mirkin, Green, Schiavoni, Murphy, Haines & Scambati, Youngstown, Ohio, for Lexington Teachers Ass'n and Ohio Educ. Ass'n.

Loren L. Braverman, Kathleen McManus, Columbus, Ohio, for Anthony Celebrezze.

## ORDER

DOWD, District Judge.

### I. INTRODUCTION.

This is a § 1983 action brought by the plaintiffs challenging the fair share fee provisions of the collective bargaining agreement between the defendant Lexington Local Board of Education and the defendant Lexington Teachers' Association. The case was submitted to the Court on stipulated facts and on October 21, 1987, the Court issued a Memorandum Opinion finding that the fair share fee provision plans for the years 1985–86 and 1986–87 were unconstitutional. 704 F.Supp. 1430. The Court maintained continuing jurisdiction over this action for the supervision of a proper relief and remedy.

The Court has before it a number of matters pending for resolution including: (1) the plaintiffs' motion for partial reconsideration of the memorandum opinion issued on October 21, 1987, docket # 131; (2) the defendant Ohio Education Association's (OEA) motion for partial reconsideration of the October 21, 1987 memorandum opinion, docket # 134; (3) the constitutional validity of the OEA's proposed fair share fee procedure for the year 1987–88, docket # 138 and # 147; (4) the determination of the monetary and equitable relief; and (5) the plaintiffs' motion to intervene in the cross complaint filed by the Lexington Local Board of Education against the Lexington Teachers Association and the Ohio Education Association, docket # 140.

The Court conducted a hearing on all the above-described motions on January 11, 1988 with counsel present and participating. Upon consideration of the parties' briefs and oral arguments, the Court is now in a position to rule on the motions and questions before the Court.

## II. MOTIONS FOR RECONSIDERATION.

A. *Plaintiffs' Motion for Partial Reconsideration.*

The plaintiffs move the Court pursuant to Rule 59, Fed.R.Civ.P. for reconsideration of that part of the Court's memorandum opinion of October 21, 1987 which holds that the plaintiff, Sara Wyatt, is precluded from relief or damages as a result of the deductions made in the year 1985–86 because she failed to object to the use of her funds for noncollective bargaining purposes. The plaintiffs argue that the Court found that for the year 1985–86 the fair share fee procedure employed by the union failed to provide for proper notice of the fair share fee reduction, proper financial disclosure, and a proper opportunity to object. Consequently, the plaintiffs argue that Ms. Wyatt cannot be penalized for failing to object under a plan that was constitutionally deficient in terms of notice. The defendant Association opposes the plaintiffs' motion and argues that the Court correctly decided that Ms. Wyatt is precluded from relief in the year 1985–86 because she failed to object to the fee collection.

At page 1446 of the October 21, 1987 memorandum opinion, the Court found

that plaintiff Sara Wyatt failed to object to the fair share fee deduction in the 1985–86 school year. Stipulated Fact 35. It is well settled that the dissenting member bears the duty of objecting to the fair share fee before relief is granted. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 1076 n. 16 (1986); *Abood v. Detroit Board of Education,* 431 U.S. 209, 238 (1977). Accordingly, any relief for damages as a result of a deduction, made in the year 1985–86 are foreclosed as to the plaintiff Sara Wyatt.

Memorandum Opinion at 1446. The plaintiff argues that the cases cited in *Hudson* at footnote sixteen addressed the issue of requiring an objection before a challenge to the expenditure of fees, and not to a challenge of whether a plaintiff was afforded due process in the collection of the fees. The plaintiffs argue that the latter is the case here, i.e., that there is a challenge to the collection aspect of the fair share fee and a denial of due process. Accordingly, the plaintiffs argue that the plaintiff Sara Wyatt was not afforded proper due process because of the inadequate notice under the 1985–86 fair share fee reduction plan and as such, could not properly object to a constitutionally deficient plan. The defendant Association argues that there is no distinction between expenditures and collection in the cases relied upon by this Court in denying plaintiff Wyatt's relief in the year of 1985–86 are controlling here. The Court agrees.

■ The Court declines to accept the plaintiffs' due process argument on a motion for reconsideration. The plaintiffs have failed to convince the Court that it has overlooked or neglected to adopt any alternative reasoning. Moreover, this is the first time the plaintiffs have attempted to make this collection versus expenditure distinction. The Court remains committed to the decision that plaintiff Sara Wyatt's

failure to object to the 1985–86 plan for a year's deductions foreclosed any relief for violations of that year's deductions. The relevant case law supports the defendant's proposition that dissent is not to be presumed.

Accordingly, the plaintiffs' motion for reconsideration is denied.

## B. Defendants' Motion for Reconsideration.

The defendant Association's motion for reconsideration pursuant to Rule 59, Fed.R. Civ.P., asks the Court to reconsider that part of the October 21, 1987 memorandum opinion which addresses the role of the independent auditor in the fair share fee computation process. The defendant Association takes exception to the Court's interpretation of *Tierney v. City of Toledo,* 824 F.2d 1497 (6th Cir.1987), where the Court stated that "[t]he accounting must clearly identify whether a particular major category of expense, is, *in the auditor's view,* for ideological purposes or for collective bargaining purposes." Memorandum Opinion at 1444 (emphasis added). The defendant Association asks the Court to delete the phrase "in the auditor's view" from page 1444 of the memorandum opinion because *Tierney* and Supreme Court cases on this issue clearly do not require the auditor to perform such a task. The plaintiff opposes the defendant Association's motion for partial reconsideration and argues that the Court properly identified the role of the auditor.

The defendant Association argues that the Court's holding requires the auditor to make an independent determination of what items are chargeable and nonchargeable to objecting nonmembers. The defendant Association argues that such a requirement goes beyond the mandate of *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) and *Tierney.* The defendant Association argues that those two cases merely required that the union's expenditures be verified by an independent auditor, and did not require the independent auditor to make a legal determination of chargeabili-

ty. The legal determination of chargeability is, according to the defendant Association, a decision to be made by the impartial decisionmaker.

The defendant Association directs the Court's attention to the Second Circuit case of *Andrews v. Education Ass'n of Cheshire,* 829 F.2d 335 (2d Cir.1987) where the Second Circuit specifically addressed the role of the independent auditor. The fair share fee procedure under attack in *Andrews* provided a nonmember with two types of financial information. First, the nonmember received the year-end financial report of the union showing its various expenses verified by an independent auditor. *Andrews,* 829 F.2d at 339. Second, the nonmembers were provided a memorandum listing the unaudited major categories of chargeable activities. *Id.* The nonmembers argued that the fair share procedure was constitutionally inadequate because it did "not provide for an independent audit of the breakdown of expenditures to each major category of chargeable activities, even though it [did] provide for independent verification of the past-year's expenditures." *Id.*

The Second Circuit carefully considered the standards enunciated by the Supreme Court in *Hudson* and concluded that the nonmember's interpretation of the role of independent auditor was misplaced. The Court viewed the nonmembers argument as requiring the auditor to make a legal determination of chargeability rather than an accounting decision. *Andrews,* 829 F.2d at 340. The Second Circuit found that "*Hudson's* auditor requirement is only designed to ensure that the usual function of an auditor is fulfilled. That usual function is to ensure that the expenditures which the union claims it made for certain expenses were actually made for those expenses." *Id.* The Court viewed the nonmember's approach as requiring the independent auditor to make the same decision as the impartial decisionmaker. "The appellants' interpretation of *Hudson's* auditing requirement is overly broad because it seeks to have the auditor function both as an auditor in the traditional sense and as the independent decisionmaker as to

chargeable expenses." *Id.* (footnote omitted). The defendant Association asks this Court to adopt a similar analysis regarding the role of the independent auditor.

The defendant Association also argues that although *Tierney* may be read broadly, it cannot be read as requiring the independent auditor to make the determination of chargeability. The defendant Association points out that the Court's interpretation of *Tierney* fails to cite any particular statement upon which it can rely on in determining that it is the "auditor's view" which should be employed in making the chargeability determination at the audit stage. Furthermore, the defendant Association requests the Court to take notice of another decision in this district which found that the independent auditor is under no duty to make the determination of chargeability. *See, Gillespie v. Willard City Board of Education,* 700 F.Supp. 898 (N.D.Ohio, 1987).

Finally, the defendant Association argues that an accountant is not qualified to make the legal determination of a chargeability. The defendant Association stands ready to present the Court with proof as to the qualifications of an accountant to make a legal determination of chargeability.

The plaintiffs argue that *Tierney* clearly held that the independent auditor "must allocate the union's expenses and make the initial determination as to which expenses are 'chargeable-nonchargeable and gray area.'" Moreover, the plaintiffs argue that the Court is required to follow the mandate of *Tierney.* Plaintiffs' Response to the Defendant Association's Motion at p. 2. The plaintiffs argue that *Tierney*'s holding on the role of the auditor was frequently repeated.

■ The Court agrees with the defendant Association's analysis and finds that *Hudson* does not require the independent auditor, typically an accountant, to make an initial determination of chargeability [1] at the audit stage. The ultimate chargeability

decision, as explained in *Andrews,* is a decision left to the independent decisionmaker. If the Court were to adopt the plaintiffs' position of requiring the independent auditor to make the initial determination of chargeability a two-tiered chargeability determination would be created. The first tier of the chargeability determination, under the plaintiffs' plan, would be made by the independent auditor and subject to the review, the second tier, by the impartial decisionmaker.

The Court further finds that *Tierney* does not require, as argued by the plaintiff, the independent auditor to make the initial determination of chargeability at the audit stage. Throughout the *Tierney* decision, when the Sixth Circuit Court of Appeals refers to the role of the auditor, it uses the terms "certified" and "verified." (e.g. "all non-members must receive an adequate accounting, *certified* by an independent auditor." *Tierney,* 824 F.2d at 1504, (emphasis added); "[t]he independent auditor must *verify* each major category in the union's budget or expenses for each major category of expenses and indicate which categories comprise each component." *Id.*). Further, in *Damiano v. Matish,* 830 F.2d 1363 (6th Cir.1987), the Sixth Circuit Court of Appeals stated that "*Hudson* ... mandates the *verification* of the union's calculations and disbursements from the fund by means of an independent auditor." *Damiano,* 830 F.2d at 1370, (emphasis added) (citing *Hudson,* 475 U.S. at 307, n. 18, 106 S.Ct. at 1076 n. 18; *Tierney,* 824 F.2d at 1504.). Moreover, in *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 106 S.Ct. at 1066, 89 L.Ed.2d 232 (1986), the Supreme Court used the term "verification." "The Union need not provide non-members with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as *verification* by an independent auditor." *Hudson,* 475 U.S. at 307, n. 18, 106 S.Ct. at 1076, n.

---

**1.** It is clear that *Tierney* requires the union to separate its expenses into the three categories of chargeable, nonchargeable, and those reasonably in dispute, i.e., the gray area. *Tierney,* 824

F.2d at 1504. The Court, for purposes of convenience, will generally refer to that process collectively as the "initial chargeability decision."

18 (emphasis added). In sum, no where can it be found that *Tierney,* nor any other court, requires the independent auditor, at the audit stage, to make an initial determination of chargeability. The auditor's role is to place a verification or certification on the funds claimed to be expended by the union in various categories including the funds which the union claims to be chargeable, non-chargeable, and those reasonably in dispute.[2]

The decision in *Tierney* itself clearly indicated that the chargeability decision was one that is vested in the impartial decisionmaker.

> The range of union expenditures will no doubt be as broad and varied as there are unions. It is not necessary for us to anticipate the categorization of any potential expense, but we see this as an administrative determination by the independent decisionmaker, under the law developing in cases such as *Ellis v. Railway Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

*Tierney,* 824 F.2d at 1504–05. Clearly then the Sixth Circuit Court of Appeals did not envision the independent auditor, again typically an accountant, to make the initial determination of chargeability. The Sixth Circuit recognized that the chargeability decision was a decision for the impartial decisionmaker.

Plaintiffs argue that if the independent auditor does not make the initial determination of chargeability, there is no check on the union in terms of the financial information they provide to a nonmember. The plaintiffs argue that nonmembers should be provided with an independent determination, at the outset, of chargeability so that the nonmember can make an informed decision. The defendant Association, however, argues that such a process does not provide a nonmember with a clear picture of

what the union's position is on various expenses. The defendant Association argues that by permitting the union to break out its expenses and what it believes to be chargeable, under explained criteria, a nonmember is provided with a clear picture of the union's position. Under this approach, the nonmember is provided with an accurate indication of where the union stands on expenses. It is the union's position on what it views as chargeable that is important to a nonmember, and not the position of an independent auditor. The nonmember, therefore, can make an informed decision as to whether to object.

Because the Court finds that *Hudson* and *Tierney* do not require the independent auditor to make the initial determination of chargeability, the Court finds it unnecessary to address the issue of whether an accountant is qualified to make a legal determination of chargeability. At the hearing on January 15, 1988, counsel for plaintiffs and counsel for defendants disputed whether an accountant was qualified to make the legal determination of chargeability versus nonchargeability. The Court finds it unnecessary to resolve that issue in light of the finding that neither *Tierney* nor *Hudson* requires an independent auditor or accountant to make such a determination.

The Court concludes, therefore, that the defendants' motion for partial reconsideration is well taken. To the extent that the memorandum opinion of October 21, 1987 held that *Tierney* requires the independent auditor to make an initial determination of chargeability, that holding is vacated. The Court finds that *Hudson, Tierney,* and *Damiano,* only require that the independent auditor, at the audit stage, verify the union's calculations and disbursements presented to the nonmember before the

---

**2.** The Court notes that in the OEA's 1987–88 independently verified budget, there are no expenses identified as reasonably in dispute. It is clear that under *Tierney,* the union is entitled to the clearly chargeable portion of non-members fees and the nonmember is entitled to an advance reduction for that part which is clearly nonchargeable. However, those expenses that are in dispute should be escrowed. *Tierney,* 824

F.2d at 1504. One could argue that a union may err on the side of chargeability rather than on the side of reasonably in dispute because the union can collect the chargeable expenses. That issue, however, is not before the Court here because under the OEA plan, the OEA escrows both the chargeable expenses and those in dispute pending the impartial decisionmaker's final determination.

decision to object must be made. The propriety of the chargeability decision by the union is a decision left for the impartial decisionmaker. The Court further finds that final holding of October 21, 1987 is not disturbed by the Court's reconsideration of the auditor's role. The Court previously found numerous other constitutional deficiencies in the relevant plans rendering them constitutionally inadequate notwithstanding the Court's present reconsideration.

## III. CONSTITUTIONAL VALIDITY OF THE OEA PROPOSED FAIR SHARE FEE PLAN 1987–88.

### A. *Introduction.*

Before the Court is a proposed OEA fair share fee advance reduction procedure for 1987–88.[3] The plaintiffs have come forward with a series of objections to the rebate plan proposed by the OEA. The Court's obligation in reviewing the proposed plan is "to assure that [the] plan at least meets the minimum constitutional requirements under the First and Fourteenth Amendments." *Tierney v. City of Toledo,* 824 F.2d 1497, 1502 (6th Cir.1987).

At the outset, the Court notes that under an order of October 29, 1987, subsequent to a status call with counsel participating, the Court granted leave to all parties to submit proposed plans on a permissible rebate procedure. The Court also provided leave of Court to all parties to submit any objections to any proposed procedure. The Court has received only the plan presented by the OEA. In response, the OEA has provided the Court with a detailed plan that attempts to meet the minimum constitutional requirements. The plaintiffs have declined the Court's invitation and limited their efforts to a search for defects in the plan arguing that any one detailed imperfection necessarily requires the rejection of the entire plan.[4] The Court, however, for the reasons that appear below, finds that with one qualification, the proposed OEA plan meets the minimum constitutional requirements.

### B. *The Plan.*

The proposed plan begins with a general statement of the purpose of the fair share fee reduction. The general statement informs the nonmember that they are obligated to pay their fair share fee but are not obligated to pay that part of the union fee that goes to support "partisan politics or ideological causes not germane to the work of the Association in the realm of collective bargaining." The general introduction provides that the nonmembers who elect not to pay the full fee must object in writing.

The general outline of the fair share fee procedure begins with the manner of notice given to nonmembers. The plan provides for general notices at the place of employment at the beginning of each school year.[5] Further, no later than December 15th of each year, the union will mail each nonmember a packet of information including a financial list of expenditures made by the Association verified by an independent auditor with an explanation of chargeable expenses, an explanation of the portion of the fair share fee that is chargeable to the nonmembers, the method used to calculate the chargeable proportion, and a copy of the plan.

A nonmember electing to object to the payment of full fair share fee, under the plan, must file a written objection with the union by January 15th. The first deduction of the fee under the plan does not occur prior to January 15th. After receipt of the

---

**3.** The OEA's proposed fair share fee advance reduction procedure as presented to the Court is set out in Appendix I.

**4.** In response to the Court's inquiry at the hearing, the OEA represented that of the approximately one hundred ninety school districts in Ohio that permit unions to collect fees from nonmembers, approximately 700 members of those locals do not belong to the union. Thus,

if one were to assume that each of the 700 nonmembers objected to the collection of their fee, the total fees in question would amount to approximately $210,000 ($300 per year multiplied by 700). Transcript of January 15, 1988 Hearing at pp. 25–27.

**5.** Attached to the plan is a specimen copy of the notice to be posted at the places of employment.

objection, "but before fair share fee deductions begin, the Association will send the nonchargeable portion of the full year's fair share fee to each objector as the advance reduction of the annual fee." Furthermore, "the Association will place an amount equal to the chargeable portion and the portion, if any, that may reasonably be in dispute, of the full year's fair share fee in an interest-bearing escrow account established by the OEA with an escrow agent."

Thereafter and on an annual basis, all objections will be consolidated into one hearing before an arbitrator selected by the American Arbitration Association under its rules.[6] The arbitrator will conduct a hearing and determine the proportion of the fair share fee that is chargeable to nonmembers under the applicable law. After the arbitrator's decision, the Association disburses all funds in the escrow account, including interest, to the proper parties in accordance with the arbitrator's decision. The plan employs a presumption for the calculation of the local's fair share fee percentage. "The percentage of chargeable expenditures by local and district associations will be presumed by the arbitrator to be whatever percentage is found to be appropriate for chargeable OEA expenditures."

The plan concludes that an objector must exhaust remedies provided in the plan before seeking judicial review of any issues capable of resolution under the proposed procedure.

C. *Plaintiffs' Objections.*

The plaintiffs' objections to the OEA's proposed rebate procedure include eight specific objections. At the outset, however, the plaintiffs raise two general objections to the proposed OEA plan.

First the plaintiffs argue that the OEA failed to provide the Court and the parties with the necessary financial disclosure and notices so that an informed and proper decision could be made on the validity of the plan. The defendant Association did not provide the Court with the financial package when it filed its proposed plan. However, subsequently defendant Association filed a response to the plaintiffs' objections to the plan and attached a number of exhibits. Exhibits A through F attached to the defendant Association's response represents the entire package a nonmember would receive,[7] including the financial information required to be provided under the plan. The Court has reviewed the financial information provided by the defendant Association and finds that the plaintiffs' first objection is not well taken.

The plaintiffs' second general objection is that the OEA failed to show that its proposed procedure has been actually adopted by any governing body of the union. The defendant Association has provided the Court with the affidavit of Jon A. Ziegler, the general counsel of the Ohio Education Association who states that the procedure has been adopted by the OEA and is currently in full force and effect. Affidavit of Jon A. Ziegler, ¶ 1. Mr. Ziegler's affidavit establishes that the plan has been adopted by the OEA.[8] The plaintiffs' second general objection is not well taken.

The Court will consider each of plaintiffs' remaining specific objections *in seriatim.*

---

6. A copy of the American Arbitration Association rules is attached to the fair share fee procedure plan.

7. The OEA supplied the Court with exhibits that represent the materials provided by the OEA to nonmembers. The packet of information includes: (1) a copy of the OEA Fair Share Fee Advance Reduction Procedure; (2) the verified audit of the OEA's financial statements; (3) the verified audit of the financial statements of the National Education Association of the United States; (4) the financial statement of the North Central Ohio Education Association; (5) the financial statement of the Lexington Teachers Association (Richland); and (6) the OEA's cover letter explaining the contents of the packet and the fair share fee. The materials total approximately 109 pages of written material.

8. The Court notes that the union has adopted the 1987–88 fair share fair rebate plan notwithstanding any decision by this Court. The union asserts that it was necessary to adopt the plan before its self imposed December 15 deadline of financial disclosure and the January 15 deadline for beginning of deductions.

### 1. Standard of Chargeability.

The plaintiffs object to the language employed by the union in describing the nonchargeable fee for an objecting nonmember. The general introduction to the plan includes the following explanation

[u]nder Ohio law, employees who choose not to join the Association may elect to not pay the portion of their fair share fees based upon Association expenditures in support of partisan politics or ideological causes not germane to the work of the Association in the realm of collective bargaining.

The plaintiffs assert that the OEA's description of what is properly nonchargeable is not consistent with the broad standard designated in *Tierney*. The plaintiffs argue that *Tierney* maintains that a union "may collect *only for those expenses affirmatively related to the bargaining agreement* because these constitute the only expenditures that, consistent with the First and Fourteenth Amendments under *Abood* and *Hudson,* the union may collect to prevent non-members' 'free riding.'" *Tierney,* 824 F.2d at 1505 (emphasis in original). The defendant Association, on the other hand, argues primarily that the language used in the statement is a verbatim quotation from the Ohio statute on fair share fee collections.

Ohio Rev.Code § 4117.09(C) provides that "[t]he internal rebate procedure shall provide for a rebate of expenditures in support of partisan politics or ideological causes not germaine [sic] to the work of employee organizations in the realm of collective bargaining." The defendant Association contends that the statutory language closely parallels that of the Supreme Court's in *Abood v. Detroit Board of Education,* 431 U.S. 209, 235–36, 97 S.Ct. 1782, 1800, 52 L.Ed.2d 261 (1977). The defendant Association argues that the union cannot be faulted for quoting the language provided by the State which in turn followed the language used by the U.S. Supreme Court. Moreover, the defendant Association argues that the language cited by the nonmembers in *Tierney* and other cases is merely dicta and "short hand for more expansive concepts." The Defendant Association's Response to the Plaintiffs' Objections to the Rebate Procedure, p. 4.

■ The defendant Association also argues that the issue of chargeability is one that is not before the Court at this point. Rather, the decision for the Court at this juncture is to determine whether the plan is presumably constitutionally valid within the confines of its opinion and relevant precedent. The defendant Association concludes that the chargeability standard is one that was not litigated in this case and thus is not ripe for decision.

The issue of what is the proper standard of chargeability is not before the Court. The plaintiffs brought this suit alleging that the plans in effect for particular years were unconstitutional. The parties are not before the Court litigating the exact standard of chargeability. Accordingly, the Court agrees with the defendant and finds that the decision of the chargeability standard is one left for the impartial decision-maker under the applicable law at that time.

The plaintiffs' first specific objection to the OEA's proposed rebate plan is not well taken.

### 2. Adequacy of Notice Regarding Obligation of Nonmembers Dues.

■ The plaintiffs argue that the notice attached and identified as "Exhibit A" to the OEA's proposed rebate procedure inadequately represents the law to nonmembers. Specifically, the plaintiffs argue that the notice provides that the employee must either join the union or pay the fair share fee, and that statement is fraudulent. The defendant Association argues that the notice merely states, in accordance with applicable law, that a nonmember will be liable for fees equal to that of members unless a nonmember objects to the deduction.

The Court finds that the proposed notice submitted with the OEA's plan adequately informs the nonmember that the nonmember will be charged a fee equal to the amount of dues unless he objects and obtains an advance reduction. The notice clearly states that a person can either be-

come a member of the union or pay a fair share fee to the Association as a nonmember. Moreover, the proposed notice also informs the nonmember that they will be provided with a copy of the internal procedure adopted for advance reduction. The Court finds that the proposed notice does not in any manner present false information to the nonmembers or coerce them into believing that their fair share fee actually equals one hundred percent of the voluntary members' dues as the plaintiffs would have this Court to believe. It is clear that under the cases subsequent to *Hudson* the union may collect a fee equal to that paid by a member unless a nonmember objects to such an amount.

Plaintiffs' objection to the adequacy of the notice is not well taken.

### 3. Financial Disclosure and Chargeability Determination by the Independent Auditor.

The plaintiffs' third specific objection to the proposed OEA plan goes to the same issue addressed in the defendants' motion for partial reconsideration. That issue is whether the independent auditor must actually make the initial allocation of the chargeable-nonchargeable gray area categories. Basically, the respectives parties' positions are identical to those that were contained in the defendants' motion for partial reconsideration.

As stated earlier, the Court has carefully considered the role of the independent auditor and has determined that it is not the role of the auditor to make an initial chargeability, nonchargeability, gray area determination. Rather, it is the independent auditor's role to verify an audit of the expenditures provided by the union. The OEA's proposed fair share fee plan specifically provides for the verification of the expenditures made by the Association by an independent auditor. The Court finds that such a policy is constitutionally sufficient.

The Court notes that the OEA's proposed plan requires even more than the plan in question in *Andrews v. Education Ass'n of Cheshire*, 829 F.2d 335 (2d Cir.1987). In *Andrews*, under the plan examined by the Court, the nonmember received two separate financial disclosures. First, an independently audited itemization of expenditures, and second, a memorandum breaking out the different categories of chargeable, nonchargeable expenditures. The second item received by the nonmembers was not independently audited. Nonetheless, the Second Circuit found that the independent audit of the expenditures was enough to pass constitutional scrutiny. The proposed OEA plan here in question goes one step further than the plan in *Andrews* and requires an independent audit of both their expenditures and their chargeability determinations. Thus, the nonmember is presented with a detailed audited expenditure explanation by the union and an audited chargeability determination.

The plaintiff's objection to the role of the auditor is not well taken.

### 4. Adequate Financial Disclosure of OEA Affiliates.

■ The plaintiffs object to the OEA's proposed plan on the basis that it does not call for adequate financial disclosure of the affiliate unions, including the National Education Association, the North Central Ohio Education Association, and the Lexington Teachers Association. The plaintiffs argue that the OEA's attempt to lump together the different levels of the union allows the union to circumvent the required audits at each level of the union organization. The plaintiffs assert that audits are required at each level under *Tierney*. The plaintiffs argue that the lack of detailed audits at each level of OEA affiliates in the proposed procedure renders it unacceptable by this Court.

The defendant Association argues that they have provided for a detailed accounting at all levels of the union by applying a presumption to the different union affiliates. The OEA's plan states that

[t]he percentage of chargeable expenditures by local and district associations will be presumed by the arbitrator to be whatever percentage is found to be appropriate for chargeable OEA expendi-

tures. Since the local and district associations spend a significantly larger percentage of their budgets on chargeable expenditures, this presumption means that objectors will be charged less than they lawfully could be charged.

The defendant Association further relies on the presumption by citing to other courts who have approved a similar presumption. *See, e.g., Gillespie v. Willard Board of Education,* 700 F.Supp. 898 (N.D.Ohio 1987); *Andrews v. Education Ass'n of Cheshire,* 653 F.Supp. 1373 (D.Conn.1987).

The *Gillespie* court found that a similar presumption utilized in a fair share fee challenge before the court was a permissible presumption. The *Gillespie* court relied on the district court decision in *Andrews v. Educational Ass'n of Cheshire,* 653 F.Supp. 1373 (D.Conn.1987) where the district court stated that "use of the evidentiary presumption that the statewide figure is appropriate for the locals satisfies constitutional requirements, even if in rare instances there may arise situations in which this presumption is incorrect." *Andrews,* 653 F.Supp. at 1378. The issue of the use of the presumption was not raised on appeal. *Andrews v. Cheshire,* 829 F.2d 335, 338 n. 1 (2d Cir.1987). Both *Gillespie* and the district court opinion in *Andrews* relied on *Robinson v. State of New Jersey,* 547 F.Supp. 1297 (D.N.J.1982), reversed on other grounds, 741 F.2d 598 (3rd Cir.1984) *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 366 (1985) as a basis for the approval of the presumption. In *Andrews,* the district court found that the presumption appeared reasonable and relied on dicta from *Robinson* where the court stated that the local associations are less likely to engage in as extensive lobbying efforts than a state national organization and thus the monies expended on those types of expenses would be less. In *Robinson,* however, the court did not address the same presumption at issue in *Andrews, Gillespie,* and this case.

The Court finds that the basic scheme of the presumption is, on its surface, reasonable. However, the Court is concerned that it has before it no evidence that the local officials expenditures are in fact less than that of the statewide percentage. In both *Andrews* and *Gillespie,* the procedural vehicle upon which the cases were decided was a motion for summary judgment. Neither court, however, identified its factual foundation for the asserted presumption. Similarly, the parties in this case have not come forward with evidence, by way of affidavit or otherwise, that would establish that the presumption offered is factually founded. At the same time, the Court is fully aware that it has not given the parties an opportunity to put on evidence regarding the statewide presumption. Without a factually based presumption, it may seem inappropriate for the Court to adopt what it believes to be a reasonable presumption in light of the substantial constitutional limitations imposed upon the collection of nonmember fees.

However, the Court is also cognizant of the fact that to require each level of the union to go through the process outlined by the OEA would so unduly burden the union that it may be effectively forced to cease the collection of the nonmember fees, altogether.

Consequently, the Court finds that for the purposes of validating the procedure outlined by the OEA, the presumption which applies by the statewide figures to the local associations is appropriate. However, an objecting nonmember, as indicated below, is entitled to object to the local expenditures. The Court cautions that the impartial decisionmaker, after hearing the evidence and weighing the objections, may determine that there is no basis in fact for such a presumption. In such a case, the impartial decisionmaker may very well find that in certain locals the percentage of the fair share fee reduction is higher at the local level than at the statewide level.

5. Objection to Single Consolidated Hearing for Objections.

■ The plaintiffs object to the OEA's proposed procedure for adopting a consolidated hearing for all appeals to the impartial decisionmaker. The plaintiffs primary argument in furtherance of their objection

is that a single consolidated hearing precludes nonmembers from challenging expenditures of their local individual bargaining units thus limiting the nonmembers' challenge to the OEA's expenditures only. The net result of such a procedure according to the plaintiffs is unfairness.

The defendant Association contends that a consolidated hearing in no manner infringes upon a nonmember's objection to local expenditures. The defendant Association directs the Court's attention to the affidavit of Jon Ziegler where he states that he

> attended much of the hearing recently conducted by the impartial decision-maker chosen by the American Arbitration Association, covering the 1985–86 and 1986–87 school years. At the hearing, expenditures by local and district associations were discussed by Association witnesses and challenged by objecting nonmembers.

Affidavit of Jon Ziegler, ¶ 3. Furthermore, the defendant Association asserts that the plan in no manner states that a nonmember is precluded from objecting to local affiliate expenditures at the consolidated hearing.

The Court declines to find the OEA's plan constitutionally fatal based upon the plaintiffs' objection to the single consolidated hearing. The plaintiffs argue that such a consolidated hearing is unfair and precludes the challenge of local affiliate expenditures. The defendants have rebutted the claim with an affidavit and a clear indication that the plan does not preclude the objection of local expenditures at the consolidated hearing. The conclusory claim of unfairness does not require invalidation of the proposed plan.

### 6. AAA Appointed Arbitrator and AAA Rules.

■ The plaintiffs object to the OEA's "unilateral" selection of the American Arbitration Association and the AAA's rules for impartial determination of union fees. The plaintiffs argue that such a selection is one step removed from allowing the union to unilaterally select the arbitrator itself. The defendants counter and assert that the court clearly held in its memorandum opinion of October 21, 1987, that the selection of the AAA was constitutionally permissible. Furthermore, the defendants argue that in *Damiano v. Matish*, 830 F.2d 1363 (6th Cir.1987), the Sixth Circuit also validated the use of the AAA appointed arbitrator.

The Court declines to accept the plaintiffs' objection to the OEA's proposed procedure plan which identifies the AAA as the body which will pick the impartial decisionmaker. The same arguments raised here have already been addressed in the memorandum opinion and for the reasons stated therein, the Court maintains that the use of the AAA arbitrator is constitutionally permissible.

Accordingly, the Court declines to find the OEA's plan constitutionally flawed based upon the objection asserted by the plaintiffs.

### 7. Promptness of Hearing.

■ The plaintiffs assert that there is no guarantee on the face of the proposed procedure that the impartial decisionmaking process will begin promptly. The plaintiffs admit that the arbitrator's ruling is required by June 15 in any given year, however, they claim that there is no guarantee that the union will not delay the time for the hearing and later rush the hearing through towards the end of May. The defendant Association merely asserts that the AAA rules provide for a full opportunity to contest the issues, and that each party will be given an adequate opportunity to present its issues.

The Court finds that the plaintiffs' objection to the promptness of a hearing is without merit. The Court finds that the asserted objection has failed to set forth facts, case authority, or anything within the plan that would indicate a problem with the promptness of the hearing.

Accordingly, the Court declines to find the OEA's proposed plan constitutionally invalid based upon the plaintiff's claim of an absence of a guarantee for a prompt hearing.

8. The Exhaustion Requirement.

■ The proposed rebate procedure plan states that "[a]ny objector must exhaust the remedies provided by this procedure, and by law, before seeking judicial review of any issues capable of resolution under this procedure." The plaintiffs argue that such an exhausting requirement is an outright violation of the nonmember's right of access to the courts. The plaintiffs rely on *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) for the requirement that no administrative remedies need be exhausted before bringing any § 1983 action. The plaintiffs similarly rely on other cases holding that a constitutional violation claim need not be administratively exhausted before access to federal court. *See, e.g., Hudson v. Chicago Teachers Union*, 743 F.2d 1187 (7th Cir.1985); *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir.1983); *United Church of the Medical Center v. Medical Center Com'n*, 689 F.2d 693 (7th Cir.1982); *Columbus Ed. Ass'n v. Columbus City School Dist.*, 623 F.2d 1155 (6th Cir.1980).

The defendant Association argues that "[t]he exhaustion requirement is just another notice to potential objectors that they will lose their right to relief if they do not object according to the procedure." It is not, according to the defendant Association, a requirement that claims of violation of constitutional rights be exhausted before seeking access to courts.

The Court finds that the language in the last paragraph of the OEA's proposed procedure plan could reasonably be taken to require a nonmember to exhaust all the avenues available in a procedure plan before asserting any rights in federal court. In light of the substantial issues raised in constitutional violations, and the cited case law, the Court finds that such language in the OEA plan should be omitted.

Accordingly, the last paragraph of the proposed plan must be omitted to meet the constitutionally minimum standards.

## IV. RELIEF.

In addition to assuring that a proper plan is in effect, the Court retained jurisdiction over this matter subsequent to the filing of the memorandum opinion on October 21, 1987 on the issue of the appropriate relief. The parties have extensively briefed the issue of relief and the Court has had an opportunity to consider the briefs and arguments of each party.

In the amended complaint, the plaintiffs seek equitable relief, compensatory damages, punitive damages, attorney's fees, and any additional relief the Court may deem proper. (*See* paragraphs A–G, Prayer for Relief, Amended Complaint).

■ In terms of equitable relief, plaintiffs first seek a permanent injunction aimed at enjoining the defendants from collecting fees, forcing nonmembers to pay fees, and enforcing the rebate procedure under the constitutionally invalid plans for the years 1985–86 and 1986–87. The plaintiffs claim that injunctive relief is necessary in order to assure that the unions will not seek to enforce their constitutionally invalid plans. The plaintiffs claim that the union's voluntary termination of those rebate plans and the implementation of the new plan does not diminish the need for the injunctive relief.

The defendants, on the other hand, argue that an injunction is not necessary because there is no indication that the union will employ the use of the 1985–86 and 1986–87. Further, the defendant Association argues that they have already adopted an entirely new rebate procedure consistent with the guidelines enunciated in the Court's holding.

The Court agrees with the defendant Association and declines to impose the permanent injunctive relief requested by the plaintiffs. The use of the procedures in the years 1985–86 and 1986–87 have been terminated and replaced by a new plan that meets the constitutional minimums of the first and fourteenth amendments. Further, the Court finds that there is no indication that the unconstitutional plans will be employed by the union after the Court extinguishes its duty under the law.

■ The plaintiffs also submit that as part of the permanent injunction remedy,

the Court should enjoin and insure that before collecting any agency fees, the Board independently verify the notice sent to a fee payor regarding the advance reduction fee, the Board independently verify "through a neutral attorney or accountant, that adequate financial disclosure has been sent to the fee payor," and that the Board independently review the entire rebate procedure to make sure that it complies with the requirements of the first and fourteenth amendments. The Board argues that the Board has in the past and continues to provide all union and nonunion employees with copies of the current collective bargaining agreement, which includes the fair share fee clause at the beginning of each school year and that they are required to do no more than what they currently provide. The Board further argues that the relief requested by the plaintiffs as against the Board is not only unnecessary but also duplicative and impractical. The Court agrees.

The plaintiffs' requested equitable relief against the Board would require the Board to duplicate essentially all of the primary procedures that are required by the union. At the same time, the public employer cannot blindly follow the lead of the union and then claim no responsibility for constitutional violations. By entering into the collective bargaining agreement, however, the employer bears the risk of joint responsibility for any constitutional violation as a result of that agreement. In this case, the constitutional violation has occurred and the Board is thus jointly liable for the relief identified herein. Although the Court recognizes that the primary relief is, in practical terms, related to the union's performance, the relief is also equally applicable to the Board. Accordingly, the Court denies the plaintiffs' request for equitable relief as against the Board.

■ As another element of equitable relief, the plaintiffs claim that they are entitled to a full refund of all fees collected under the 1985–86 and 1986–87 rebate plans with interest. The plaintiffs claim that such a remedy will make the plaintiffs whole and act as a deterrent for the de-

fendants regarding the implementation of a constitutionally invalid rebate procedure. The plaintiffs further argue that the defendant Association had no right to collect the money from a nonmember absent a constitutionally valid plan.

The defendant Association argues against full restitution of the fees collected under the 1985–86 plan and the 1986–87 plan. The defendants argue that the plaintiffs are entitled only to those amounts of money determined to be non-chargeable by the impartial decisionmaker for the years in question with interest. The defendant Association directs the Court's attention to its decision in *McGlumphy v. Fraternal Order of Police*, 633 F.Supp. 1074 (N.D. Ohio 1986) where the Court stated that "[t]he appropriate remedy ... first requires the implementation of constitutionally sufficient procedures for determining the appropriate rebate, and ultimately requires the F.O.P. to return to the plaintiffs that amount of the collected dues not used to support collective bargaining, contract administration, and grievance adjustment activities." *McGlumphy*, 633 F.2d at 1084. Moreover, the defendant Association argues that a full refund of all fees collected would defeat the purpose of the fair share fee provisions and allow the nonmembers to receive a "free ride" for the two years in question. Such a result, according to the defendant Association, is not that which was contemplated by the law or any case interpreting fair share fee procedures.

The Court finds that the plaintiffs in this action are entitled to a return of all monies determined to be nonchargeable by the impartial decisionmaker for the years 1985–86 and 1986–87 as to the plaintiff Lowary, and 1985–86 only as to the plaintiff Sara Wyatt. The return of the nonchargeable monies must include interest. The Court agrees with the defendant and finds that to permit a full refund of all monies would allow the plaintiffs a free ride for the two years in question.

The plaintiffs seek a declaratory judgment on three separate items. First, a judgment declaring the 1985–86 and 1986–87 plans unenforceable and void because

they violate the constitutionally protected rights of the plaintiffs. Second, that the rebate procedures utilized in the two years in question were unconstitutional. Third, a declaration that Ohio Rev.Code § 4117.09 is unconstitutional.

To the extent the Court found the 1985–86 and 1986–87 plans unconstitutional, the Court declares that such plans are unenforceable and in violation of the first and fourteenth amendment rights of the plaintiffs as indicated in the Court's Memorandum Opinion of October 21, 1987. The Court declines, however, to declare that the Ohio Rev.Code § 4117.09 is unconstitutional given the Court's rejection of the plaintiffs' challenge to the constitutionality of the statute.

■■■■■ The plaintiffs seek an award for compensatory damages under § 1983. The Court declines to award the plaintiffs compensatory damages because no evidence was presented regarding such damages and the plaintiffs have failed to come forward in their briefs and specifically state the basis for the claims. The parties submitted the case to the Court on stipulated facts and the Court finds that there are no facts that would warrant an award of compensatory damages. Similarly, the Court declines to award the plaintiffs punitive damages under § 1983. The plaintiffs have failed to establish that the defendants' conduct was motivated by evil motive or intent. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

■■■ The plaintiffs also seek an award of nominal damages and claim that they are entitled to nominal damages under *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In *Carey* the Supreme Court found that nominal damages are appropriate for relief from constitutional violations when there is an absence of actual damage. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1053–54; *see also, Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 2544 n. 11, 91 L.Ed.2d 249 (1986). The defendants argue that the plaintiffs are not entitled to nominal damages because the nonmembers will receive a refund of their nonchargeable fee with interest.

The Court finds that the plaintiffs are entitled to nominal damages. Neither plaintiff has established actual damages and yet a constitutional violation has occurred. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1053–54. Thus, the Court finds that the plaintiff Lowary is entitled to nominal damages not to exceed one dollar per year for the year 1985–86 and 1986–87. Further, the plaintiff Wyatt is also entitled to nominal damages not to exceed one dollar for the year of 1986–87.

In sum, the Court concludes that in terms of relief, the plaintiffs are entitled to a declaration that the plans in effect for 1985–86 and 1986–87 are unenforceable and in violation of the plaintiffs first and fourteenth amendment rights as indicated in the Memorandum Opinion of October 21, 1987. Furthermore, the plaintiffs are entitled to a return of those expenses that were determined nonchargeable by the impartial decisionmaker for the years in question with interest. The plaintiff Lowary is entitled to nominal damages not to exceed one dollar per year for the year 1985–86 and 1986–87, and the plaintiff Wyatt is also entitled to nominal damages not to exceed one dollar for the year of 1986–87.

The plaintiffs make a claim for attorney fees under § 1983 and the defendants do not oppose the plaintiffs' general entitlement to attorney's fees.

## V. LEXINGTON LOCAL BOARD OF EDUCATION'S CROSS COMPLAINT AGAINST THE DEFENDANT ASSOCIATION.

On November 6, 1987, the defendant Lexington Local Board of Education filed a cross claim against the defendants Lexington Teachers Association and the Ohio Education Association. On December 21, 1987, the Lexington Teachers Association and the Ohio Education Association answered the cross claim of Lexington Board of Education.

The plaintiffs now move the Court to intervene in the cross complaint filed by the Lexington Local Board of Education

(Board) against the Lexington Teachers Association and the Ohio Education Association (collectively referred to as Association). The plaintiffs move to intervene in the cross claim as a matter of right, pursuant to Rule 24(a)(2), Fed.R.Civ.P., and alternatively for permissive intervention pursuant to Rule 24(b)(2), Fed.R.Civ.P.. The Board and the Association both oppose the plaintiffs' motion to intervene. For the reasons that appear below, the Court denies the plaintiffs' motion to intervene the cross complaint.

The Board's cross complaint against the Association essentially seeks indemnification from the Association for any liability imposed upon the Board as a result of the fair share fee collection under the collective bargaining agreement between the Association and the Board. The Board seeks indemnification against the Association on a number of theories and specifically the Board seeks indemnification under the collective bargaining agreement, Article IV of the year 1986–87, wherein the Board contends that the Association agreed to indemnify it for liability arising out of the fair share fee deduction. The Association denies that they are under a duty to indemnify the union under any of the asserted basis.

The plaintiffs' primary argument in support of their motion to intervene in the cross complaint is that they have a strong interest in arguing against the Board's claim of indemnification because the plaintiffs believe the Board should not be able to contract away its constitutional responsibility to the plaintiffs.

Rule 24 provides:

[u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, un-

less the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). The plaintiffs claim that they have an interest in the property or transaction of the cross complaint and that the disposition of the cross complaint would impede its ability to protect their interest. The Association and the Board argue that the plaintiffs do not have a sufficient interest in the cross claim and that their interests are adequately protected by the present party.

■ The Court finds that the plaintiffs have failed to establish that they are entitled to intervene in the Board's cross complaint against the Association as a matter of right. The Association contends, and the Court agrees, that the plaintiffs have no interest in the relationship between the Association and the Board. The plaintiffs' interest, i.e., their constitutional rights, have been fully litigated in the main action and the appropriate relief has been awarded against both the Board and the Union. The only interest that the plaintiffs have in the cross complaint is one that was already argued in the underlying action, i.e., that the Board should bear some responsibility for the implementation of constitutionally deficient plans. The Court has already addressed that issue and has concluded that the Board does maintain some responsibility for a constitutionally adequate plan. Accordingly, the Court finds that the interest claimed in the cross complaint by the plaintiffs is one that has already been litigated in the underlying action and the plaintiffs have no substantial interest in the contractual relationship between the union and the Association's post-liability determination.

Furthermore, the Court finds that plaintiffs' claimed interest is adequately protected by the Association. The Association has denied liability on the Board's cross claim which is essentially the position that the plaintiffs would assert. The Court finds that the defendant Association will more than adequately protect the interests of the plaintiffs because it is the Association which will bear the ultimate liability upon the successful prosecution of the cross

complaint. In comparison, the plaintiffs have no real interest in terms of liability nor is their claim for relief dependent upon the cross complaint.

Accordingly, the Court finds that the plaintiffs' motion to intervene in the cross complaint as a matter of right is denied. The Court also declines to permit the plaintiffs to intervene in the cross complaint on the basis of permissive intervention under Rule 24(b)(2) as the plaintiffs have failed to establish grounds for permissive intervention. The plaintiffs have merely sought permissive intervention as an alternative to intervention as a right and has not actively pursued such a claim. Accordingly, the Court declines to permit intervention on a permissive basis.

## VI. CONCLUSION.

For the reasons that appear above:

1. The plaintiffs' motion for partial reconsideration of the memorandum opinion issued on October 21, 1987, docket # 131, is denied.

2. The defendant Ohio Education Association's (OEA) motion for partial reconsideration of the October 21, 1987 memorandum opinion, docket # 134, is granted. To the extent that the memorandum opinion of October 21, 1987 held that *Tierney* requires the independent auditor to make an initial determination of chargeability, that holding is vacated. The Court finds that *Hudson, Tierney,* and *Damiano,* only require that the independent auditor, at the audit stage, verify the union's calculations and expenditures. The propriety of the chargeability decision by the union is a decision left for the impartial decisionmaker. The Court further finds that final holding of October 21, 1987 is not disturbed by the Court's reconsideration of the auditor's role. The Court previously found numerous other constitutional deficiencies in the relevant plans rendering them constitutionally inadequate notwithstanding the Court's present reconsideration.

3. The Court finds that the OEA's proposed fair share fee procedure for the year 1987–88 meets the minimum standards of the first and fourteenth amendments, provided that the language regarding the exhaustion of remedies under the plan is omitted and notice of the omission is served upon all nonmembers and members.

4. In terms of relief, the Court concludes that the plaintiffs are entitled to a declaration that the plans in effect for 1985–86 and 1986–87 are unenforceable and in violation of the plaintiffs first and fourteenth amendment rights as indicated in the Memorandum Opinion of October 21, 1987. Furthermore, the plaintiffs are entitled to a return of those expenses that were determined nonchargeable by the impartial decisionmaker for the years in question with interest. The plaintiff Lowary is entitled to nominal damages not to exceed one dollar per year for the year 1985–86 and 1986–87, and the plaintiff Wyatt is also entitled to nominal damages not to exceed one dollar for the year of 1986–87.

The process of determining an award of attorneys' fees will be decided after the Court has an opportunity to discuss the matter with counsel.

5. The plaintiffs' motion to intervene in the cross complaint filed by the Lexington Local Board of Education against the Lexington Teachers Association and the Ohio Education Association, docket # 140, is denied.

6. The Court will conduct a status call on March 22, 1988 at 8:00 a.m. to discuss the following matters: (a) the determination of the procedure for resolving the fee application; and (b) the Board's cross complaint against the Association. A separate notice of the status call will be sent to counsel in addition to this order.

IT IS SO ORDERED.

### APPENDIX 1

### OEA

### FAIR SHARE FEE ADVANCE REDUCTION PROCEDURE

### I. GENERAL STATEMENT

This procedure shall be effective for the 1987–88 membership year and thereafter. This procedure applies where a local affil-

▮▮▮▮▮ iate of the Ohio Education Association (OEA) is the exclusive bargaining representative for the employees of a bargaining unit. In this procedure, the local association, together with the affiliated district association, the Ohio Education Association, and the National Education Association, will be referred to as "the Association."

Many bargaining agreements between a local association and an employer require that bargaining unit employees either join the Association or pay a fair share fee to defray the cost of representing the employees. The amount of the fee is based upon the Association's expenditures for the preceding membership year. Under Ohio law, employees who choose not to join the Association may elect to not pay the portion of their fair share fees based upon Association expenditures in support of partisan politics or ideological causes not germane to the work of the Association in the realm of collective bargaining. To elect not to pay that portion, the non-member must file a written objection according to the procedure outlined below. The failure to file an annual written objection in a timely manner will preclude the non-member from electing not to pay that portion for that membership year.

## II. PROCEDURE FOR ANNUALLY ELECTING NOT TO PAY FULL FAIR SHARE FEE

### A. NOTICE OF FAIR SHARE FEE AND PAYROLL DEDUCTION

At the beginning of each school year, the Association will post notices at each place of employment indicating that the collective bargaining agreement with the employer requires each bargaining unit employee to either become a member of the Association or to pay a fair share fee. The notice will also indicate the amount of the fair share fee, and the date when the fair share fee will first be deducted from the employee's pay. The first deduction of the fee will not occur prior to January 15th. The notice shall substantially conform to the model attached as Appendix A.

### B. EXPLANATION OF FAIR SHARE FEE

Not later than December 15th of each year, the Association will send each non-member an explanation of the basis for the fair share fee to enable the non-member to gauge the propriety of that fee. That explanation will include:

(1) A list of expenditures made by the Association, by major category, during the preceding year verified by an independent auditor; and an identification of whether the major category of expense, or a particular portion thereof, is chargeable to objectors;

(2) The proportion of the fair share fee that is chargeable to objectors under applicable law;

(3) The method used to calculate the chargeable proportion;

(4) A copy of this procedure.

The explanation will be sent to the non-member's home address by first class mail. An employee who enters the bargaining unit after the explanations have been sent, and who elects not to join the Association, will promptly be provided the explanation after entry into the bargaining unit.

### C. OBJECTION

Any non-member who elects not to pay the full fair share fee must file a written objection with the Ohio Education Association (OEA), at P.O. Box 2550, 225 East Broad Street, Columbus, Ohio 43216, either by mail or by personal delivery. Objections must include the objector's name, home address, and place of employment. An objection will be considered timely only if postmarked or actually received by the OEA on or before January 15th. An objection from an employee who received the explanation described in subsection B above *after* the general distribution will be timely if postmarked or actually received by the OEA on or before thirty days after the explanation was mailed.

The objection may be phrased in general terms and need not identify any particular expenditures to which the non-member specifically objects.

After receiving the objections, but before fair share fee deductions begin, the Association will send the non-chargeable portion of the full year's fair share fee to each objector as the advance reduction of the annual fee. At the same time, the Association will place an amount equal to the chargeable portion and the portion, if any, that may reasonably be in dispute, of the full year's fair share fee in an interest-bearing escrow account established by the OEA with an escrow agent. Thereafter, objectors will be responsible for paying the full year's fair share fee either by periodic payroll deduction or self-payment.

Objectors who are in the bargaining unit for only a portion of the school year shall only be responsible for a pro rata share of their fair share fee.

## D. APPEAL TO IMPARTIAL DECISIONMAKER

The OEA shall annually ask the American Arbitration Association (AAA) to appoint an impartial arbitrator from its special panel of labor arbitrators experienced in this field. The OEA will provide the AAA with the names, addresses and place of employment of all timely objectors, and any other information requested by the AAA.

All timely objections will be consolidated into one hearing per year, which may not be waived by the Association, and which shall be held in Columbus, Ohio, at a location and on a date determined by the arbitrator.

Except as otherwise provided here, all matters relating to the arbitration proceeding shall be in accordance with the "AAA Rules for Impartial Determination of Union Fees," a copy of which is attached as Appendix B.

After the hearing, the arbitrator shall determine the proportion of the fair share fee that is chargeable to non-members under applicable law. The arbitrator shall issue the decision and determination not later than thirty (30) days from the closing of the hearing but in no event later than June 15th, and submit copies to the OEA and to each objector. The percentage of chargeable expenditures by local and district associations will be presumed by the arbitrator to be whatever percentage is found to be appropriate for chargeable OEA expenditures. Since the local and district associations spend a significantly larger percentage of their budgets on chargeable expenditures, this presumption means that objectors will be charged less than they lawfully could be charged.

After the arbitrator's decision, the Association shall direct the disbursement of all funds in the escrow account, including interest, to the proper parties in accordance with that decision.

## III. APPEAL: OBLIGATION TO EXHAUST REMEDIES

The objectors and/or Association may challenge the arbitrator's decision, pursuant to law, but such challenge, if successful, shall not result in a fair share fee greater than that determined by the arbitrator.

Any objector must exhaust the remedies provided by this procedure, and by law, before seeking judicial review of any issues capable of resolution under this procedure.

## APPENDIX A

## SPECIMEN NOTICE

(To be posted in prominent places throughout the work place at the beginning of each membership year)

To all employees in the bargaining unit represented by the _____ _(1)_ .

The labor agreement between the Employer and the Association requires all members of the bargaining unit to become and remain members of the Association or to pay a fair share fee to the Association. If you do not voluntarily join the Association, you must pay the fair share fee.

The amount of the fair share fee for the _(2)_ school year is $ _(3)_ and if paid by payroll deduction, the first deduction will occur _(4)_ .

The Association, through its parent organization the Ohio Education Association, has adopted an internal procedure to provide for an advance reduction of the non-chargeable portion of the fair share fee to fee payors who timely object. All fair share fee payors will be notified by the Ohio Education Association by December 15th of how the fair share fee was calculated and provided a copy of the internal procedure.

(1) Name of affiliated local association.
(2) Insert the appropriate school year, i.e., "1987–88."
(3) Insert the dollar amount of the UEP dues unless the locally negotiated agreement specifies a lesser amount or less than 100% of UEP dues.
(4) Specify pay date or payroll period when the first deduction is to occur, which shall not be prior to January 15th.