Howard K. ANDREWS, et al., Plaintiffs-Appellants,

v.

EDUCATION ASSOCIATION OF CHESHIRE, et al., Defendants-Appellees.

No. 1215, Docket 87–7225.

United States Court of Appeals, Second Circuit.

Argued June 4, 1987.

Decided Sept. 21, 1987.

John C. Scully, Nat. Right to Work Legal Defense Foundation, Springfield, Va. (Michalik & Lynch, New Britain, Conn., Dennis Cicarillo, of counsel), for plaintiffs-appellants.

Robert H. Chanin, Washington, D.C. (Bredhoff & Kaiser, Washington, D.C., Bruce R. Lerner, Connecticut Educ. Ass'n, Hartford, Conn., Ronald Cordilico, William Dolan, of counsel), for defendants-appellees.

George E. Finlayson, Jr., Waterbury, Conn. (Siegel, O'Connor, Schiff, Zangari & Kainen, P.C., Waterbury, Conn., of counsel), for defendant-appellee Waterbury Bd. of Educ.

Before FEINBERG, Chief Judge, LUMBARD, and NEWMAN, Circuit Judges.

LUMBARD, Circuit Judge:

On this appeal we are asked to decide the constitutionality of a set of procedures used by a group of Connecticut teachers unions for allocating collective bargaining, contract administration and grievance adjustment expenses for the purpose of charging agency fees to nonmembers. Appellants, a group of non-union employees of the various Connecticut school boards that are named as defendants in this action, appeal from a judgment entered by Judge Jose A. Cabranes in the District of Connecticut on February 18, 1987. Judge Cabranes denied plaintiffs' motion for summary judgment, granted defendants' cross-motion for summary judgment and dismissed plaintiffs' pendant state law claim for lack of jurisdiction. The decision is reported as *Andrews v. Education Ass'n of Cheshire* at 653 F.Supp. at 1373 (D.Conn.1987). Plaintiffs maintain that Judge Cabranes erred in refusing to hold the defendants' proposed procedures for collecting the agency fees unconstitutional under *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). We affirm the judgment of the district court but remand with directions to enjoin the union from exercising any alleged right under its agreement with the American Arbitration Association unilaterally to waive an oral hearing on any nonmember's dissent.

I.

Plaintiffs are nonunion teachers employed by one of three Connecticut boards of education—Cheshire, New Milford and Waterbury. These three boards have collective bargaining agreements with their respective education associations—the Cheshire Education Association, the New Milford Education Association and the Waterbury Teachers Association (collectively "LEAs"). Each LEA recognizes its education association as its exclusive bargaining representative. All the local associations are affiliates of the Connecticut Education Association ("CEA") and the National Education Association ("NEA").

Each of these collective bargaining agreements provides that if an employee of one of the local associations chooses not to become a member of the union which represents the local's employees, that employee remains obligated to pay an agency fee to the union. These fees are designed to allocate a pro-rata share of the union's collective bargaining and grievance adjustment expenses to non-union employees who receive the benefits of such activities, but who do not pay dues. The deductions are based on the provisions of the Connecticut Teacher Negotiations Act, Conn.Gen.Stat. § 10–153a(b). That statute authorizes a local association to pay a service fee to the exclusive bargaining representative of its employees in an amount "not greater than the amount of dues uniformly required of members of the exclusive bargaining representative organization which represents the costs of collective bargaining administration and grievance adjustment." Under the plans these fees are collected by the local association through an automatic payroll deduction; from those deductions, each LEA pays a portion of the agency fee to the CEA and the NEA.

Plaintiffs have elected not to become members of the defendant labor unions but are in the bargaining units represented by these defendants, and, in accordance with the plan, they are charged agency fees. They now challenge the procedures under which the agency fees are computed. They claim that the procedures provided for by the plan do not meet the constitutional requirements recently considered by the Supreme Court in *Hudson*. Pursuant to a pretrial order of May 14, 1986, defendants filed with the district court a written description of a proposed agency fee collection plan for their respective bargaining units.

Under the plan, prior to November 15 of each year, the unions send a memorandum to each nonmember required to pay an agency fee, which indicates the amount of the fee that the associations intend to

charge and how that fee was calculated by listing expenditures for each major category of chargeable activity. The plan provides that that memorandum shall also inform each potential objector as to the procedure he or she must follow to challenge the amount of the fee. Together with this memorandum, each nonmember receives "such additional information as may be necessary for him or her to gauge the propriety" of the fee, including the budgets of each LEA, the CEA, and the NEA projecting expenditures for the current service fee year and end-of-year financial reports for each LEA, the CEA, and the NEA for the immediately preceding year, together with statements for an independent auditor or authorized association representative verifying those reports. Nonmembers have at least thirty days after receiving the reports to file an objection with the CEA. Nonmembers who do object to any portion of the fee pay 100% of their service fee into an interest-bearing escrow account at the Connecticut National Bank until the challenge is resolved.

If any nonmembers challenge the fee, the unions contact the American Arbitration Association (AAA) under a pre-existing contract between the union and the AAA and ask it to select, from a list of arbitrators experienced in public sector labor relations, an arbitrator to hear the dispute. The arbitrator then conducts the hearing in accordance with standard AAA rules for determination of agency fees. The unions are required to prove at these hearings the percentage of CEA and NEA budgets which will be expended for activities that may be lawfully charged to objecting nonmembers; the procedure assumes that each of the LEAs expends at least as large a percentage of their budgets on chargeable activities as does the state-wide CEA.[1] Unless an extension is granted, the arbitrator must file his opinion by January 30. After that, the unions must recalculate their fee to comport with the arbitrator's decision and, if necessary, rebate some of the money in the escrow accounts and make whatever adjustments are necessary in the objecting nonmembers' future payments.

In the district court prior to trial, the plaintiffs made six constitutional challenges to the defendants' agency fee collection procedures. Judge Cabranes rejected each of those challenges and found the procedures to be constitutional. He dismissed the plaintiffs' pendant state law claim for lack of subject matter jurisdiction and granted judgment for the defendants.

## II.

Plaintiffs advance two arguments. First, they contend that the defendants' procedure is constitutionally deficient because an independent auditor does not verify the financial information that the unions use to classify expenses into the various categories of expenditures. Second, they maintain that the AAA does not satisfy the constitutional requirement for an impartial decisionmaker.

The Supreme Court has recently dealt with the issue of agency fees. In *Hudson*, the Court considered the constitutionality of procedures "to draw that necessary line [between contract bargaining and administration costs which are properly charged to nonmembers and sums for the support of ideological causes which are not] and to respond to nonmembers' objections to the manner in which it was drawn." 106 S.Ct. at 1069.

The Court founded its decision that unions which are the sole bargaining agents for employees of public agencies may charge nonmembers for bargaining and administrative costs on *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1789, 52 L.Ed.2d 261 (1977). The Court quoted *Abood* for the proposition that "[T]he objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective bargaining activi-

---

1. This issue was litigated in the district court. The court found this allocation plan acceptable. Plaintiffs do not raise this issue on this appeal.

The procedural rules that apply during these hearings will be discussed later in this opinion.

ties." 106 S.Ct. at 1074. The Court explained that "the fact that [the nonmembers' rights to refuse to support causes in which they did not believe] are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringements." *Id.* In a footnote in *Hudson,* the Court cited several cases that held that when First Amendment rights are implicated, the government must adopt the least restrictive means available that will allow it to pursue a legitimate state interest to satisfy this "carefully tailored requirement." *Id.* at 1074 n. 11. *Hudson* therefore recognizes two distinct interests: first, the nonmembers' First Amendment right not to be coerced to contribute funds to support political activities that they do not wish to support and, second, the union's and the government's interest in establishing a rational system to consummate labor negotiations. The decision therefore mandated that the unions and government use a narrowly drawn plan that protects the nonmembers' first amendment interests while allowing the unions and government to pursue their own needs.

After analyzing the procedures used by the Union in *Hudson* to charge nonmembers for bargaining and administrative costs, the Court found the procedures constitutionally inadequate on a number of grounds. In *Hudson,* the Court also held that a union's system for collecting agency fees would be constitutionally adequate if the process includes "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow of the amounts reasonably in dispute while such challenges are pending." *Id.* at 1078.

One of the *Hudson* requirements, that of avoiding "the risk that dissenters' funds may be used temporarily for an improper purpose," *id.* at 1075, is easily met by the union's escrow arrangement with the Connecticut National Bank.

*Hudson* also mandates that an agency fee collection plan "include[s] an adequate explanation of the basis for the fee." *Id.* at 1078. The plan here at issue provides that a variety of information be given to nonmembers to allow them to determine the propriety of the fee that the union is seeking to charge. This information includes the end of year financial reports of each LEA, the CEA and the NEA which show their actual expenses for the previous year, verified by an independent auditor "or authorized association representative." The nonmembers are also provided with a memorandum listing expenditures for each major category of chargeable activities, and the employees are provided with the projected budgets for the current year of their local LEA and the CEA and NEA. In addition to these specific requirements, the plan mandates that the employee be given "such additional information as may be necessary for him or her to gauge the propriety of the service fee."

Appellants attack this plan because it does not provide for an independent audit of the breakdown of expenditures to each major category of chargeable activities, even though it does provide for independent verification of the past-year's expenditures. Appellants support their argument with language from a footnote in *Hudson* which states: "The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses as well as verification by an independent auditor." *Id.* at 1076 n. 18.

We agree with appellants that the district court should not have approached this question with a balancing test in which the cost to the union and the practicality of the procedures were to be weighed against the dissenters' First Amendment interests. We believe that the procedures mandated by *Hudson* are to be accorded all nonmembers of agency shops regardless of whether the union believes them to be excessively costly. Excessive cost cannot form the basis for allowing the union or the government to avoid *Hudson's* requirement that the procedures used by the union to allocate bargaining and administrative costs be carefully tailored to minimize the intrusion on the nonmembers' rights. Nonetheless,

we do not believe that *Hudson* stands for the proposition that a union's procedures are constitutionally infirm unless they constitute the least restrictive process imaginable. When the union's plan satisfies the standards established by *Hudson*, the plan should be upheld even if its opponents can put forth some plausible alternative less restrictive of their right not to be coerced to contribute funds to support political activities that they do not wish to support.

■ Appellants' claim that *Hudson* requires that both the union's expenditures and its allocation of expenses to chargeable and nonchargeable categories be audited turns on an interpretation of the purpose of an audit. Appellants' approach to this problem would have the auditor making a legal, not an accounting, decision regarding the appropriateness of the allocation of expenses to the chargeable and nonchargeable categories. We believe, however, that *Hudson's* auditor requirement is only designed to ensure that the usual function of an auditor is fulfilled. That usual function is to ensure that the expenditures which the union claims it made for certain expenses were actually made for those expenses. The union's plan satisfies this requirement. The appellants' interpretation of *Hudson's* auditing requirement is overly broad because it seeks to have the auditor function both as an auditor in the traditional sense and as the independent decisionmaker as to chargeable expenses.[2]

■ Finally, *Hudson* requires that to deal with dissenting nonmembers, any union's plan must "provide for a reasonably prompt decision by an impartial decisionmaker." *Id.* at 1076. In this process, the objecting nonmember bears the burden of objecting but the union bears the burden of justifying the proposed fees. *Id.* at 1075–76. It also finds "that an expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decisionmaker." *Id.* at 1077 n. 21. Nevertheless, it requires that "the arbitrator's

selection [cannot] represent the Union's unrestricted choice." *Id. See also Tierney, et al. v. City of Toledo*, 824 F.2d 1497, 1504 (6th Cir.1987). We believe that the Union's plan which calls for the AAA to arbitrate fee disputes also satisfies this requirement. In *Hudson*, the Court found that the appeal process established by the union was not constitutional because the arbitrator was selected through the unrestricted choice of the union. Here, the AAA, an organization that is undeniably separate from this union, selects the arbitrator. Additional protection against bias is provided by the AAA rules, under which the arbitrator may be removed for cause by the parties or if the personal disclosure mandated by the AAA reveals that the arbitrator is potentially biased.

■ Appellants argue that the AAA does not meet *Hudson's* requirement for an impartial reviewer of the proposed deductions because union officials sit on the AAA board of directors, union lawyers were involved in the drafting of the AAA agency fee arbitration rules, and the list of possible arbitrators has been limited by the union's agreement with the AAA to arbitrators who are experienced in "public sector labor relations." Although these facts arguably create the possibility that some of these arbitrators may be biased in the union's favor, we do not think that such possibility renders the selection process unconstitutional. The Third Circuit, for example, has found "in the absence of pecuniary interest or personalized animus, evidence of a generalized bias may be sufficient to establish a constitutional violation but only 'in the most extreme of cases.'" *Robinson v. State of New Jersey*, 806 F.2d 442, 450 (3rd Cir.1986), *quoting Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986). We do not believe that plaintiffs have shown that this is such an extreme case. Moreover, in *Hudson*, the Court explicitly approved of the use of an arbitrator to resolve agency fee disputes. 106 S.Ct. 1066, 1077 n. 21.

---

**2.** Judge Cabranes' opinion implies that *Hudson* might not require an independent auditor if the union involved were small enough. 653 F.Supp. at 1377. We need not decide the issue here.

Even if a few unions have affairs so simple as not to require auditing, the three interlocking organizations in this case do not fall into that category.

In addition, "[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." *Pitta v. Hotel Association of New York*, 806 F.2d 419, 420, 423 (2d Cir.1986) (citation omitted).

■ Appellants also object to the proposed process as being inadequate to protect their First Amendment rights. In *Hudson*, the Court concluded that an objecting nonmember "is entitled to have his objection addressed in an expeditious, fair, and objective manner." *Id.* 106 S.Ct. at 1076. It also concluded, however, that "a full-dress administrative hearing, with evidentiary safeguards is [not] part of the 'constitutional minimum' that the process must provide." *Id.* at 1077 n. 21.

With one qualification, we believe that the proposed process satisfies this requirement. Under the plan currently before us, objecting nonmembers may be represented by counsel, receive a stenographic record of the hearing, present testimony and documentary evidence, examine the evidence submitted by the union, submit written briefs and attend the hearing. Also in accordance with *Hudson's* procedural safeguards, the burden of proof in showing that a certain expense is chargeable to nonmembers falls on the union. In addition, the process provides that the arbitrator's decision is binding on the union but an objecting member may have it reviewed by a court.

Our single reservation about the process is that paragraph nineteen of the union's agreement with the AAA seems to allow the union unilaterally to waive the oral hearing provided for by the AAA rules. Judge Cabranes found that this provision did not nullify the plan because its prospective application is uncertain at this time. We disagree and find that the possibility that the union could unilaterally waive the hearing would nullify the validity of these otherwise constitutional procedures. We believe that the possibility that an objecting nonmember may receive no hearing does not satisfy *Hudson's* requirement of an impartial decisionmaker to resolve fee disputes.

Accordingly, we affirm the judgment in all respects, except that we direct that it be modified to enjoin the use of the waiver provision contained in the union's agreement with the AAA. No costs to any of the parties.