James P. LEHNERT, Elmer S. Junker, James E. Lindsey, Sam C. Peticolas, John R. Schauble, and Theodore D. Speerman, Plaintiffs,

v.

The FERRIS FACULTY ASSOCIATION–MEA–NEA, Michigan Education Association, National Education Association of the United States, the Board of Control of Ferris State College, S. Eugene Bychinsky, Robert L. Ewigleben, Earl D. Gabriel, Robert P. Gerholz, Fran Harris, Delbert D. Long, Robert C. Redman, Thomas P. Scholler, Patricia M. Short, and Steven L. Thomas, Defendants.

No. G 78–346 CA1.

United States District Court, W.D. Michigan, S.D.

Aug. 22, 1988.

"for the sole purpose of determining if and when the union defendants have adopted constitutional procedures." *Id.* at 1335. The matter is presently before me on defendant unions' motion for approval of new service-fee collection procedures and for dissolution of the injunction against the deduction of fees from the wages of plaintiff nonunion public employees pursuant to the Court's limited retention of jurisdiction.

In September 1987, the union defendants moved for approval of their service fee collection procedures. Union defendants have modeled their collection procedures after collection procedures which were approved in *Andrews v. Education Association of Cheshire,* 829 F.2d 335 (2d Cir.1987) and *Lowary v. Lexington Board of Education,* 704 F.Supp. 1456 (N.D.Ohio 1988).

I note that this case has now been pending for a decade. Still, always optimistic of discovering and exploiting unexplored avenues of "getting to yes" with the least discord, I ordered a settlement conference to be held with U.S. Magistrate Doyle A. Rowland on April 5, 1988. As a result of the conference, a number of outstanding issues were consolidated and some agreement on certain issues was reached. Counsel for union defendants agreed to make certain modifications to its already thrice-revised procedures in order to satisfy some of the objections of the plaintiff as as well as those of the "non-union" defendants.[1]

Magistrate Rowland directed the union defendants to file "new" procedures with the Court on or before April 18, 1988, which would incorporate the aforementioned modifications, and to file a new brief in support of those revised procedures. I have reviewed the revised procedures (*see* Objections to Political Ideological Expenditures/Administrative Procedures attached to April 18, 1988 Affidavit of Beverly J. Wolkow) as well as the briefs and supporting documentation submitted by all the parties. I note that the union defendants have

Allaben, Massie, Vander Weyden & Timmer by Sam F. Massie, Jr., Grand Rapids, Mich., Raymond J. LaJeunesse, Nat. Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs.

Mika, Meyers, Beckett & Jones by Steven L. Dykema, Grand Rapids, Mich., for defendant, the Bd. of Control of Ferris State College.

Mitchell E. Roth, Office of General Counsel, Nat. Educ. Ass'n, Washington, D.C., for Nat. Educ. Ass'n.

White, Beekman, Przybylowicz, Schneider & Baird by Arthur R. Przybylowicz, James J. Chiodini, Okemos, Mich., for Union defendants.

## OPINION

ENSLEN, District Judge.

On August 25, 1986, I enjoined the above-captioned union defendants from collecting future service fees from plaintiffs until such time as the unions had adopted constitutionally adequate service fee collection procedures. *See Lehnert v. Faculty Association–MEA–NEA,* 643 F.Supp. 1306 (W.D.Mich.1986). I retained jurisdiction

1. Here the so-called non-union defendants include Ferris State University, the Board of Control of Ferris State University, and the individual university officers. I have considered the nonunion defendants suggestions in making my rulings, but it does not appear that these "nonunion" defendants have standing to object to the union defendants' motion for approval within the context of the issues raised and litigated by plaintiffs in this case.

actually filed two proposed procedures: one governing the collection of agency fees during the 1987–88 and 1988–89 fiscal years and one covering the collection of agency fees in 1989–90 and subsequent years. The two procedures are essentially identical. Accordingly, I see no need to analyze them separately.

Also pending is plaintiffs' related motion to compel discovery and to continue proceedings. That motion was filed by plaintiffs in response to the union defendants' motion for approval of revised procedures for collection of service fees.

*Discussion*

■ Addressing the later motion first, I find it unnecessary to review the actual underlying source documents in order to pass upon the validity of the proposed service fee procedures. I note that neither *Andrews, supra,* nor *Lowary, supra,* found it necessary to examine the actual financial reports, audit verifications, work papers, the forms and instructions to professional staff, or the internal workings of the unions' accounts payable and general ledger system—the discovery of which plaintiffs seek in their motion to compel. Moreover, following the remand in *Tierney v. City of Toledo,* 824 F.2d 1497 (6th Cir. 1987), Magistrate Carr has recently denied the *Tierney* plaintiffs' request to take additional discovery prior to the court's review and final approval of the parties' proposed revisions to defendants' plan. Magistrate Carr found that such an action would be "broader and more intrusive ... [than] it should or can be under *Tierney.*" *Tierney v. City of Toledo,* 123 F.R.D. 235 (D.C.Ohio 1988). I find Magistrate Carr's reasoning with respect to the discovery issue persuasive and also find many of his comments applicable here.

The role of this Court [under *Tierney*] is, therefore, to be more passive than active; at most it is to provide oversight at this initial stage of review and approval, and to refrain from and resist any tendency toward direct involvement in regulating the plan's implementation. *Its function is to approve the structure, not supervise the plan's operation.*

The request to take discovery at this preliminary stage and the possibility that that request, if granted, will lead to further disputes and opportunities for greater involvement by this Court raise the prospect for ever-increasing participation by the Court in the day-to-day, issue-to-issue operational activities as the plan is implemented. Such involvement by the court is contrary to the role projected by the Sixth Circuit in *Tierney.* As important, it would be contrary to the fundamental policy that *courts are to be at most minimally involved in labor disputes, and that extra-judicial means of dispute resolution—including primarily arbitration—are preferred.*

*Tierney v. City of Toledo,* 123 F.R.D. at 236 (emphasis added).

I simply find it unnecessary and improper to review the source documents requested by plaintiffs in order to determine whether union defendants' revised procedures satisfy the constitutional requirements of *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed. 2d 232 (1986). Accordingly, I will deny plaintiffs' motion to compel.

The union's pending motion asks this Court to exercise its well established discretionary power, codified in Rule 60(b)(5) of the Federal Rules of Civil Procedure, to modify or vacate an equitable decree "if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Evans v. Buchanan,* 512 F.Supp. 839, 849 (D.Del.1981) (footnote omitted) (quoting *System Federation v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961)); *see* 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.18[8] (2d ed. 1985). Because the union defendants assert only changed factual circumstances, that is, new service fee procedures, defendants bear the burden of proof. *Stewart v. General Motors,* 756 F.2d 1285, 1291 (7th Cir.1985).

Plaintiffs argue that the union defendants have claimed the requisite "new facts" by affidavit only and that plaintiffs have submitted affidavits or have otherwise set forth facts showing that there is a

genuine issue for trial. *See* Federal Rules of Civil Procedure 56(c)(e). The gravamen of plaintiffs' argument is that the union defendants must demonstrate that they have provided all of the first amendment safeguards which are required by *Hudson,* and that if plaintiffs cannot controvert defendants' factual claims without discovery, then proceedings should continue in order to permit further discovery. Plaintiffs argue further that although in some respects the defendants' proposed scheme is deficient on its face, in other respects the sufficiency of the scheme cannot be determined without discovery and an evidentiary hearing.

The Supreme Court has clearly stated that:

> the constitutional requirements for the Union's collection of agency fees include [1] an adequate explanation of the basis for the fee, [2] a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and [3] an escrow for the amounts reasonably in dispute while such challenges are pending.

*Hudson,* 475 U.S. at 310, 106 S.Ct. at 1078. Further, it is clear that a procedure which meets only part of those requirements is constitutionally inadequate. *Id. See also Damiano v. Matish,* 830 F.2d 1363, 1370–72 (6th Cir.1987).

*The Information Provided by the Union's Procedures*

The union's procedures provide that by November 30, 1988, the Executive Director of the MEA or a designee shall determine the reduced agency fee for both the 1987–88 and 1988–89 fiscal years, based on expenditures during the 1987–88 fiscal year. The actual reduced fee which is assessed will include a five dollar reduction from the amount calculated (based upon 1987–88 fiscal year expenditures) to provide an additional cushion for disputed chargeable costs.

The procedures indicate that nonmembers will receive a list of expenditures made by the NEA and MEA, by major category, verified by an independent auditor. The information will indicate whether the major category of expense, or a particular portion of that category, is chargeable to objectors. In addition, a list of expenditures of local associations certified by a local association officer will be provided. Nonmembers will also receive an explanation of the method used to calculate the reduced fee and a copy of the procedure. The independent auditor will verify the amount of expenditures that were made in both chargeable and nonchargeable areas. It is clear that under the union's procedures, the auditor will not make the legal determination of which expenditures are chargeable or nonchargeable, but rather will only verify that the expenditures were actually made in the categories determined by the union defendants to be chargeable or nonchargeable. The union defendants' determination of chargeable and nonchargeable categories will be subject to review by the independent decision maker.

Plaintiffs argue that in order for a nonmember to make an "intelligent and informed objection" to the use of his service fees, the auditor should verify whether there are established legal criteria and contemporaneous hard data which show the purpose of expenditures, and which reasonably justify the union's allocation. Further, plaintiffs assert that where such "legal criteria" and "contemporaneous hard data" are absent, the auditor should ensure that that fact is disclosed to nonmembers. Plaintiffs argue further that if an auditor merely accepts at "face value" the union's definition of chargeable costs and its method of allocating costs as chargeable or nonchargeable, little reliability is added to the union's calculation and that the auditor's "blind approval" is likely to mislead employees into not objecting.

I note that the Sixth Circuit is currently considering the issue of whether a number of activities of the union defendants are properly considered to be chargeable or nonchargeable expenditures. Moreover, additional case law developments may again change the complexion of the "gray area" categories. I do not believe the law requires or should require me to review, clarify and approve each document which

relates to these categories and which information may, in turn, be sent to nonmembers.

■ The plaintiffs read *Tierney* to require that an independent certified public accountant make a "legal" as well as an accounting decision. Such a reading would essentially provide objecting plaintiffs with two passes at the alleged "bad spots" in the proffered apple. Plaintiffs' approach would have the auditor function as both "an auditor in the traditional sense and as the independent decision maker as to chargeable expenses." *Andrews*, 829 F.2d at 340. My reading of *Hudson*, *Tierney* and *Damiano* leads me to conclude that all that is required is that an independent auditor, at the audit stage, verify the union's *calculations* and *disbursements* which have been presented to the nonmember. An impartial decision maker will later, if required, make the decision as to whether the chargeability decision of the union is appropriate. Moreover, my role here is simply to test the proposed procedures against the constitutional requirements of *Hudson.*

The *Hudson* Court said:

The union need not provide nonmembers with an exhaustive list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor.

*Hudson*, 106 S.Ct. 1076 n. 18.

■ In sum, I do not read *Hudson*'s verification requirement as entailing an initial chargeability analysis. It is clear that under *Hudson*, *Tierney*, and *Damiano*, union procedures can constitutionally allow the union to immediately collect for expenditures which are clearly chargeable and only require the escrowing of those expenditures which fall into a so-called "gray" area: an area which is neither clearly chargeable or clearly nonchargeable. Here the union's procedures provide that the entire reduced agency fee is to be escrowed. Accordingly, the issue of what activities are clearly chargeable and which are merely "gray" areas is not at play in the discussion and analysis of the union

procedures presently before me. In *Tierney*, the Sixth Circuit noted that "the range of union expenditures will no doubt be as broad and varied as there are unions. It is not necessary for us to anticipate the categorization of any potential expense, for we see that as an *administrative determination by the independent decision maker.*" *Tierney*, 824 F.2d at 1504–1505 (emphasis added).

Accordingly, within the context just discussed and for all the reasons previously stated, I find that the union's procedures concerning the information to be provided nonmembers as well as the role of the auditor under those procedures are consistent with the basic constitutional requirements set forth in *Hudson* as glossed in *Tierney* and *Damiano* of an "adequate explanation of the fee."

■ A related issue concerning the "adequate explanation of the fee" factor, however, is whether the union's procedures which allow it to avoid an independent audit of the local's union expenditures by employing the so-called "local presumption" is constitutional under *Hudson*. The procedures provide that "[t]he percentage of chargeable expenditures by local associations may be presumed by the arbitrator to be whatever percentage is found to be appropriate for chargeable MEA expenditure[, s]ince the local associations spend a significantly larger percentage of their budgets on chargeable expenditures." April 18, 1988 Affidavit of Beverly J. Wolkow, Step III at 4.

The Supreme Court has noted that "absolute precision in the calculation of [the service fee] is not to be expected or required" and that "no decree would be proper which appeared likely to infringe the union's right to expend uniform exactions under the union shop agreement." *Abood v. Detroit Board of Education*, 431 U.S. 209, 239 n. 40, 97 S.Ct. 1782, 1802 n. 40, 52 L.Ed.2d 261 (1977). The defendants argue that the local presumption is a realistic expression of the above-cited "precision principle." Defendants assert that the MEA has some 900 local bargaining units which vary in size, but many of which are quite small.

Defendants assert further that whether the units are large or small, local associations spend a larger percentage of their budgets on chargeable expenditures than does the state association. Moreover, defendants assert that to the extent that the local presumption lacks absolute precision, it errs in favor of the nonmembers.

The defendants' assertion has a certain common sense appeal. Further, in support of their argument defendants cite *Robinson v. State of New Jersey*, 547 F.Supp. 1297, 1324 (D.N.J.1982), reversed on other grounds, 741 F.2d 598 (3rd Cir.1984), *cert. denied*, 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 366 (1985); *Andrews v. Education Association of Cheshire*, 653 F.Supp. 1373 (D.Conn.1987), and *Lowary v. Lexington Local Board of Education, supra.*

Plaintiffs argue, however, that not only is there no record evidence which *supports* the premise for the valid use of the "local presumption," an arbitration decision in an Indiana case actually demonstrates that the presumption is based upon a false premise. The deposition of Frank T. Zotto [Ex. 2 at 46–54] establishes that the arbitrator in the Indiana case described therein found that three of the fourteen NEA locals spent a *smaller* percentage of their total expenses on chargeable activities than the state association.

I also note that *Robinson* was decided before *Hudson* and merely found that based on the evidence of record certain local associations were "much less likely to engage in extensive political and lobbying activities than the state and national organizations, and therefore, it is less likely that the moneys they receive from plaintiffs will be used for those purposes." *Robinson*, 547 F.Supp. at 1324. Further, it is true that the district court in *Andrews* found that "the use of the evidentiary presumption that the statewide figure is appropriate for the locals satisfies constitutional requirements, even if in rare instances there may arise situations in which this presumption is incorrect." *Andrews*, 653 F.Supp. at 1378. However, the Second Circuit did not rule on this specific issue as it was not challenged on appeal. Still, the Second Circuit did address the related ques-

tion of the adequacy of an independent audit. It noted that:

> ... the district court should not have approached this question with a balancing test in which the cost to the union and the practicality of the procedures were to be weighed against the dissenters' first amendment interests ... the procedures mandated by *Hudson* are to be accorded all nonmembers of agency shops regardless of whether the union believes them to be excessively costly. Excessive cost cannot form the basis for allowing the union or the government to avoid *Hudson's* requirement that the procedures used by the union to allocate bargaining and administrative costs be carefully tailored to minimize the intrusion on the nonmembers' rights.

*Andrews*, 829 F.2d at 339.

It appears that although it may be more expensive and more problematic from an administrative point of view to show the actual chargeable expenditures of local union expenditures rather than to employ the use of a so-called "local presumption," I do not believe that the use of the presumption complies with *Hudson's* requirement that detailed financial information concerning all major categories of union expenses—including local union expenses—be supplied to nonmembers. *Cf. Tierney*, 824 F.2d at 1506.

Defendants attempt to save the use of the "local presumption" by using language which provides that the percentage of chargeable expenditures by local and district associations "may be presumed by the arbitrator" to be the same. Defendants indicate that they have used the word "may" to avoid the mandatory "will be presumed by the arbitrator" language which the defendants used in *Lowary*. In *Lowary*, Judge Dowd noted that the impartial decision maker, after hearing the evidence and weighing the objections, may determine that there is no basis *in fact* for the use of the presumption.

The Court believes that the fact that the "local presumption" is rebuttable before an arbitrator does not change its unconstitutional character under *Hudson*. First, the use of the local presumption increases the risk that the reduced fee collection from

the objectors would be in excess of what is appropriate. More important, the presumption impermissibly shifts the burden of persuasion in the arbitration. "The nonmember's burden is simply the obligation to make his objection known." *Hudson*, 475 U.S. at 306, n. 16, 106 S.Ct. at 1076, n. 16. At trial, I clearly required all levels of the union—including the local—to prove chargeable costs from concrete evidence and rejected the use of presumptions, "[s]ince the burden of persuasion on the issue of the percentage of chargeable expenditures remains always with the union, and since the union possesses the facts and records from which this percentage is to be calculated...." *Lehnert*, 643 F.Supp. at 1327. Further, the Sixth Circuit has stated that while it is the dissenting nonunion member's burden to voice his objection, "the burden of showing entitlement to those funds remains with the union, even during arbitration." *Tierney*, 824 F.2d at 1505.

■ At trial, I also found that "[w]hile a limited degree of imprecision is tolerable in calculating a service fee, the reliance on budgeted as opposed to actual expenditures ... is too imprecise." *Lehnert*, 643 F.Supp. at 1328. Similarly, I find that, like budgeted expenditures, presumed expenditures are not actual expenditures and their use falls short of the precision required under *Hudson, Tierney,* and *Damiano.* "[B]ecause First Amendment rights are implicated, the method of calculating service fees for objecting employees ... must be narrowly drawn" in order to prevent the collection of any amount which represents clearly nonchargeable expenditures." *Damiano*, 830 F.2d at 1369. Here, the union's proposed use of the local presumption is too loosely tailored to satisfy the constitutionally narrow fit required by *Hudson, Tierney,* and *Damiano.* The union's proposal that a list of expenditures of local associations be certified by *a local association officer* does not satisfy the requirement that expenditures be verified by an independent auditor.

### The Waiver Issue

Another issue still unresolved is the plaintiffs' charge that in the current fiscal year defendant MEA notified nonmembers that they would receive the financial information required under *Hudson* and be able to object *only* upon the condition that they give up their contractual right to payroll deduction and pay the fee in a lump-sum. In order to use payroll deduction, nonmembers apparently had to return a waiver of disclosure which purported to "continue from year to year unless altered in writing prior to the start of each subsequent school year." *See* Affidavits of James E. Lindsey & Vicky Niewonder filed October 13, 1987. Further, the union apparently seeks to continue this waiver practice prospectively in that under the proposed new procedures disclosure will be made "[a]bsent an individual's voluntary, written waiver of the right to receive such information." *See* Defendant's October 30, 1987 Reply Brief in Support of Procedures at 7, n. 3.

■ Plaintiffs argue that the first amendment is infringed by a requirement that nonmembers either waive their constitutional rights or forego a contractual right to pay fees in installments by payroll deduction. I believe that such a requirement violates the disclosure requirements mandated by *Hudson* and discriminates against dissenters in that service-fee procedures "must not be framed so as to discourage the exercise of [nonmembers'] First Amendment rights by intimidation or the imposition of unrealistic and excessively complex procedural requirements." *Tierney*, 824 F.2d at 1503.

It is clear that first amendment rights may be waived, but such waiver must be "voluntary, knowing, and intelligently made, with full awareness of the legal consequences to be valid." *UAW v. Dana Corp.*, 679 F.2d 634, 645 (6th Cir.1982); *cf. also Sambo's Restaurants v. Ann Arbor*, 663 F.2d 686 (6th Cir.1981). I believe that in order to approve the use of such waivers, those waivers must contain language which includes a clear and full explanation of nonmembers' rights under *Hudson.* At present, it does not appear that the proposed waivers used by the defendants adequately explain the contours of nonmembers first-amendment rights. While I be-

lieve that such rights are waivable, the coercive effect of the present waiver procedures appears to function so as to discourage the exercise of nonmembers' first amendment rights.

*The Opportunity for Prompt, Impartial Review*

█ Nonmembers are entitled to an opportunity to obtain "a reasonably prompt decision by an impartial decision maker" as to whether the reduced fee includes only constitutionally chargeable costs. *Hudson,* 475 U.S. at 307, 310, 106 S.Ct. at 1076, 1077. Under the unions' proposed procedures the impartial decision maker will be "an arbitrator ... selected pursuant to the Rules for Impartial Determination of Union Fees of the American Arbitration Association ['AAA']." Further, under those rules "the AAA will select an arbitrator from a special panel of experienced labor Arbitrators." *See* Wolkow Affidavit, Step III & AAA Rule 3.

*Hudson* noted "that an expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decision maker, so long as the arbitrator's selection did not represent the union's unrestricted choice." *Hudson,* 475 U.S. at 308 n. 21, 106 S.Ct. at 1077 n. 21. Plaintiffs argue that because the AAA is neutral between unions and employers does not necessarily mean that it is impartial between unions and nonunion employees. Plaintiffs argue further that there are "fairer alternatives" available such as selection by the MEA and representatives of nonmembers' interests or appointment by a government agency, e.g., the Federal Mediation and Conciliation Service. Plaintiffs conclude that the selection of an arbitrator by the AAA does not satisfy *Hudson.*

Defendants argue that because the Michigan Employment Relations Commission has not yet promulgated rules to ensure timely decisions in agency fee disputes and because several courts have upheld the utilization of arbitrators selected pursuant to the rules of the AAA, defendants have eliminated reference to the possibility of utilizing MERC procedures.

I am not persuaded that plaintiffs' affidavits have raised a material fact with respect to the issue of "actual and/or apparent bias" of the AAA. I note that the proposed rules here specifically provide that the union may not waive oral hearing pursuant to Rule 19 of the AAA Rules. This accommodation is consistent with the Second Circuit's decision in *Andrews* which enjoined the use of the waiver provision contained in the Rules for Impartial Determination of Union Fees of the AAA. The fact that "fairer" procedures may arguably exist is irrelevant provided the proposed procedures meet the constitutional minimum. In sum, I find that the proposed use of the AAA comports with the impartiality requirement set forth in *Hudson.*

*Escrow*

█ It appears that defendants have provided a "timetable" for making objections, and that plaintiffs are now in agreement with that "timetable." Even assuming that plaintiffs still maintain their objections set forth in their Brief in Opposition filed April 1, 1987, I find that the "timetable" provisions of the union's revised procedures which allow nonmembers thirty (30) days for filing objections to be constitutionally adequate under *Hudson. Cf. Andrews v. Education Ass'n of Chesire,* 653 F.Supp. 1373 (D.Conn.1987).

█ However, plaintiffs argue that the proposed plan is constitutionally deficient because it provides that a nonmember must only pay that portion of the reduced fee "which has accrued" into escrow, and permits collection thereafter of the rest of the fiscal year's fee as it becomes due but does not require escrow of those monies. *See* Wolkow Affidavit at Step II.

I note that this omission appears to be inadvertent in that the Brief in Support of Revised Procedures states that the procedures provide for escrow "of the entire reduced agency fee." *See* Brief in Support of Revised Procedures at 14. Nevertheless, the language of the plan should be modified to clearly indicate this fact before I can approve the plan. In all other respects, I find the proposed escrow procedure to comport with *Hudson.*

*The Standard for Chargeable Costs*

█ At trial, I found the NEA's rebate procedure to be deficient under *Hudson*

because "the method for determining the reduced fee or 'rebate' amount is based upon an acknowledgement of nonchargeable, political activity rather than a justification of the chargeable activity and expenditures." *Lehnert*, 643 F.Supp. at 1333. It follows then that the standard for calculating the fee must properly define chargeable costs in order for it to pass constitutional muster under *Hudson*.

■ The definition of chargeable activities which will be applied under the union's procedures by the MEA and the impartial decision maker to calculate and review the fee amount is set forth in attachment A to the Wolkow Affidavit. The Policy Regarding Objections to Political–Ideological Expenditures ("the Policy") states that the reduced fee will be "based upon a determination of the percentage of the MEA's [sic] annual expenditures for the prior year necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees." Plaintiffs argue that standing by itself that standard would be constitutional but that it is modified by the sentence which precedes it. The preceding sentence defines as nonchargeable "the financial support of an ideological cause or political activity unrelated to collective bargaining, contract administration, grievance adjustment and *employee representation*." (emphasis added). Put differently, under this statement of policy, the logical implication is that any ideological cause or political activity related to employee representation would be chargeable.

The Court finds that the term "employee representation" is unconstitutionally overbroad in this context. It is clear that a union "may collect *only for those expenses affirmatively related to the bargaining agreement* because these constitute the only expenditures that, consistent with the First and Fourteenth Amendment under *Abood* and *Hudson,* the union may collect to prevent nonmembers' 'free-riding.'" *Tierney,* 824 F.2d at 1505 (emphasis added).

Virtually every activity undertaken by unions is in some way "related to *employee representation*" because union members are all employees. Accordingly, without some modification, the term "employee representation," standing alone, appears to be unconstitutionally overbroad.

## CONCLUSION

I find that the defendant union's procedures, such as they exist at the present time, do not meet the minimum constitutional standards established under *Hudson* as glossed by *Tierney* and *Damiano*. Accordingly, I must, at this time, deny the defendants' motion for approval of new procedures and continue the existing injunction. My opinion makes clear the relatively few areas in which the present procedures are constitutionally deficient. I will, of course, entertain a later motion by defendants to dissolve the present injunction provided the revised procedures take into account the deficiencies I have articulated.