**Barbara CRAMER, et al., Plaintiffs,**

v.

**George G. MATISH, Director, et al., Defendants.**

**No. K88–306 CA.**

United States District Court,
W.D. Michigan, S.D.

Nov. 15, 1988.

See also 705 F.Supp. 1233.

Milton L. Chappell, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., and Allaben, Massie, Vander Weyden and Timmer by Sam F. Massie, Jr., Grand Rapids, Mich., for plaintiffs.

Frank J. Kelley, Atty. Gen. by Gary P. Gordon and Todd B. Adams, Asst. Attys. Gen., Lansing, Mich., for State defendants.

Pinsky, Smith, Fayette, Soet & Hulswit by Michael Fayette and McKay Tower, Grand Rapids, Mich. and Jordan Rossen, Gen. Counsel by Michael B. Nicholson and Daniel W. Sherrick, Assoc. Gen. Counsel, Intern. Union, UAW, Detroit, Mich., for defendants Intern. Union, UAW and UAW Local 6000.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiffs, a class consisting of State "employees within the Human Services and Administrative Support bargaining units who have not signed an Authorization for Deduction of Representation Service Fee," filed the instant action challenging the enforcement of the union security clause in the collective bargaining agreement between the State of Michigan ("the State") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local 6000–UAW ("Local 6000"). Plaintiffs claim that the UAW's new Agency Fee Payer Objection Policy ("New Policy"), which allows for the automatic deduction

of nonunion members' proportion of chargeable representation service fees, is unconstitutional because there are not adequate procedural safeguards as required by *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).[1]

This Court granted a temporary restraining order on October 7, 1988, enjoining the State defendants from making payroll deductions or in any other way collecting service fees from the salaries and wages of the State employees. Subsequently, the Court issued a preliminary injunction on October 26, 1988, extending the TRO until December 8, 1988.

## FACTS

In late 1985, the UAW was elected as the exclusive bargaining unit representative of the State employees, Local 6000. Initially, a collective bargaining agreement was reached with the State of Michigan which became effective on January 8, 1986. This agreement authorized the collection of a service fee from nonmembers of the UAW "in an amount not to exceed the regular biweekly dues uniformly assessed against all members of the Union." On October 8, 1987 the Sixth Circuit in *Damiano v. Mat-*

*ish*, 830 F.2d 1363 (6th Cir.1987), held that the UAW's amended "Agency Fee Objector Policy" was unconstitutional under *Hudson*.[2]

After the decision was rendered in *Damiano*, the UAW made revisions once again, ultimately resulting in the present New Policy.[3] The New Policy was mailed to each nonmember agency fee payer with a cover letter,[4] a letter from an independent certified public accountant,[5] and the Report of Expenditures Incurred in Providing Collective Bargaining Related Services for Fiscal Year 1987 ("the Report").

Presently pending before this Court are cross-motions for summary judgment. The Court has heard oral arguments, and has read and reviewed the parties' motions and briefs and attached depositions and affidavits in support thereof. As there are no genuine issues of material facts remaining, the Court can render a decision as a matter of law. Fed.R.Civ.P. 56.

Plaintiffs challenge the New Policy and the Report alleging that they violate the *Hudson* requirement that an adequate explanation of the basis for the service fee must be provided to nonmembers of the UAW. More specifically, plaintiffs claim that (1) the Report is not properly audited;

---

1. The Supreme Court has recognized that every employee in a collective bargaining unit may be required to pay a service fee to help defray the cost of collective bargaining, contract administration, grievance adjustments, as well as those costs necessary to implement and effectuate the duties of the union as the exclusive representative of the bargaining unit. *Ellis v. Railway Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984). However, the union may not require dissenting employees to pay "any sums for the support of ideological causes not germane to its duties as a collective bargaining agent." *Id.* at 447, 104 S.Ct. at 1892. The minimum constitutional requirements for collecting agency fees from nonmembers "include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 310, 106 S.Ct. 1066, 1077, 89 L.Ed. 2d 232 (1986).

2. The court in *Damiano* held that the policy was unconstitutionally defective under *Hudson* for

three reasons. First, there was not an advance reduction of the service fees. Second, the union failed to provide sufficient information to potential objectors absent a request. Third, the union failed to provide a reasonably prompt decision on review by the impartial decisionmaker. *Damiano*, 830 F.2d at 1370–71.

3. A copy of the New Policy is attached hereto as "Appendix".

4. This letter was sent to nonmember employees on May 25, 1988. It indicated that objections could be filed until July 11, 1988. Defendants point out to the Court that no objections were filed at this time.

5. The letter from the independent auditor indicates that it "reviewed the [Report]" and "verified that the information ... [was] accurately presented in [the Report]." The letter also notes that "the U.A.W. is responsible for determining which categories of expenditures are allocated as chargeable and which are non-chargeable." Finally, the letter states that "this information presents fairly all relevant accounting information related to the expenditures of the [UAW]."

(2) the Report fails to disclose the expenditures of each local union adequately; and (3) the objection policy is calculated to discourage meaningful objections to union activity by threatening additional chargeable expenses. Plaintiffs also allege that the objection policy unlawfully requires specific objections and provides for a final and binding arbitration decision. Finally, plaintiffs challenge the indemnification section of the collective bargaining agreement between the UAW and the State, arguing that it unlawfully allows the UAW to hold the State harmless from liability.

Defendants have also moved for summary judgment. Defendants assert that not only do the New Policy and the Report meet *Hudson's* minimum constitutional requirements, but they also cure the defects found by the Sixth Circuit in *Damiano.*[6]

## STANDARD OF REVIEW

The standard of review this Court must use requires examining the New Policy and the Report in light of plaintiffs' challenges to see if they meet the constitutional requirements enunciated in *Hudson.* It is important to note that *Hudson* provides the constitutional minimum and requires unions to use the least restrictive means available, although not necessarily the most effective means imaginable. *See Andrews v. Education Association of Cheshire,* 829 F.2d 335, 340 (2d Cir.1987). Although *Hudson* reaffirms the principle that the First Amendment requires carefully tailored plans in order to minimize infringements on protected rights, the Court's role is to approve the structure of the plan, not supervise its operation. The Court must only "assure that any plan at least meets the minimum constitutional requirements under the First and Fourteenth Amend-

ments." *Tierney v. Toledo,* 824 F.2d 1497, 1502 (6th Cir.1987).

## AUDITOR VERIFICATION OF FEE CALCULATION

■ *Hudson* requires a union to provide an adequate explanation for the basis for the service fee. "Basic considerations of fairness, as well as concern for the First Amendment rights at stake, also dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fees." *Hudson,* 475 U.S. at 306, 106 S.Ct. at 1075. Thus, a union is required to inform nonunion employees as to "the amount of the service fee, as well as the method by which that fee was calculated ... [and] the verification of the union's calculations and disbursements from the fund by means of an independent auditor" so that an employee may intelligently appraise what proportion of dues are allocable to negotiating and administering the collective bargaining agreement. *Damiano,* 830 F.2d at 1370; *Tierney,* 824 F.2d at 1504. Practical considerations dictate that " '[a]bsolute precision' in the calculation of the charge to nonmembers cannot be 'expected or required.' " *Hudson,* 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18 (quoting *Railway Clerks v. Allen,* 373 U.S. 113, 122, 83 S.Ct. 1158, 1163, 10 L.Ed.2d 235 (1963)). Thus, a union is not required to "provide nonmembers with an exhaustive and detailed list of all its expenditures," but instead, a nonmember should receive at a minimum "adequate disclosure [of] the major categories of expenses." *Hudson,* 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18; *Damiano,* 830 F.2d at 1370.

■ The issue before the Court is what an auditor is required to do in order to "verify the calculations." This Court concludes that *Hudson* only requires the inde-

---

**6.** The first defect found in *Damiano* was a lack of advance reduction of service fees. The New Policy provides for a service fee calculated as a percentage of the union dues. Further, the UAW's expenditures are reviewed by the UAW at the end of each fiscal year in order to determine chargeable/nonchargeable amounts. The second defect was a failure to provide sufficient information to potential objectors. The New Policy provides a completely new procedure to

provide advance information to nonmembers. The third defect was that there was a failure to provide a reasonably prompt decision on review by the impartial decisionmaker. The New Policy provides for a hearing and decision before an AAA-appointed impartial decisionmaker within 60 days of the last appeal filed during the 45-day objection period (between May 15 and June 30).

pendent auditor to fulfill the usual function of an auditor; that is, to verify a union's calculations and disbursements. The auditor is required to guarantee that the financial information is presented accurately and fairly and in such a fashion that nonmembers may form an intelligent objection to the calculations if they so choose. The independent auditor is not required to make the initial determination of what expenses are related to the collective bargaining activities at the audit phase; rather, that decision is left for the impartial decisionmaker. As the Sixth Circuit in *Tierney* noted, the categorization of expenses is "an administrative determination" to be made by "the independent decisionmaker, under the law developing...." *Tierney*, 824 F.2d at 1497.

The Court finds that the New Policy meets the *Hudson* independent auditor verification requirement. Furthermore, based on the evidence and affidavits of what the independent auditors actually did in "verifying" the UAW's calculations and expenditures, it appears that the verification was sufficient in this case.

### THE LOCAL PRESUMPTION

■ The New Policy provides for a breakdown of chargeable and nonchargeable items for the International UAW. The Report sent to nonmembers shows this breakdown, but does not attempt to analyze separately Local 6000's expenditures. The UAW presumes that local unions "invariably expend a greater portion of their resources performing chargeable activities...." The UAW asserts that in effect the nonmember is paying a smaller amount than if the fee were based on a local union's expenditures. This presumption is used by the UAW based on "difficulties inherent in attempting to analyze separately the expenditures of each of the Local Unions" and "in the interest of reducing accounting and reporting tasks."

The Sixth Circuit requires that the disclosure "must include an audited, detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and non-

agreement related purposes." *Tierney*, 824 F.2d at 1503. This Court agrees that a nonmember would want to know the amount his local union is expending in order to make an intelligent decision regarding whether to object to the amount of chargeable fees. Further, the Court notes that excessive cost alone is not sufficient to allow a union to avoid *Hudson's* requirement that the procedures be carefully tailored in order to minimize the intrusion upon the nonmembers' First Amendment rights. *See Andrews*, 829 F.2d at 339. "The use of the local presumption increases the risk that the reduced fee collection from the objectors would be in excess of what is appropriate." *Lehnert v. Ferris Faculty Association*, 707 F.Supp. 1473 (W.D.Mich.1988).

The Court concludes that potential objectors are entitled to know the specific breakdown of their local. Although this Court agrees that utilization of the local presumption may seem reasonable, some evidence is necessary in order to establish the presumption's reliability. Potential objectors should not be required to have blind faith in the UAW's unverified unilateral decision that the local union presumption is in fact an accurate presumption. The Court finds no evidence and the UAW has provided no evidence to the Court or to the potential objectors that this presumption does have an established basis in fact. Thus, this presumption falls short of the precision required by *Hudson, Tierney*, and *Damiano*.

The Court recognizes that once the local presumption has been established as a reliable presumption as applied to Local 6000, the UAW may rely on the presumption in future years in the report of expenditures sent to employees. However, even in future years the UAW will retain the burden of proving the validity of the local presumption before the independent decisionmaker if the chargeable amounts are challenged according to the objection policy procedures.

### THE OBJECTION POLICY

The New Policy provides for the annual distribution of information to each agency

fee payer including full disclosure of the major categories of expenditures of the UAW. The information is sent out annually to each member on May 15, without request. The employee then has until June 30 to object. Fees are not deducted until July 1.

*Hudson* requires that procedures for objecting must "afford dissenting nonmembers a reasonable time to voice their objections and must not be framed so as to discourage the exercise of their First Amendment rights by intimidation or the imposition of unrealistic and excessively complex procedural requirements." *Tierney*, 824 F.2d at 1503. The issue in this case is whether the procedures are calculated to discourage meaningful objections.

Plaintiffs argue that the New Policy has three flaws. First, the UAW discourages meaningful objections by warning nonmembers that upon objection mixed function department fees may be imposed on the nonmember objector pending arbitration, although such fees would not otherwise be imposed upon the nonmembers.[7] Second, the New Policy requires the objecting nonmember to "state the basis" of his claim. Third, the New Policy provides that "[t]he determination of the impartial decisionmaker shall be final and binding." Each of plaintiffs' arguments is considered below.

■ First, plaintiffs challenge a footnote in the Report through which the UAW has reserved the right to use mixed funds to justify the percentage of service fees charged. The UAW has specifically reserved the right to argue before the independent auditor that fees not charged are in fact chargeable. Upon making an objection, the objecting employee is in effect arguing that fees charged should not be chargeable, thus the UAW must be allowed to argue that the fees are chargeable in order to defend and justify its position that the percentage set is correct. Under the New Policy, the impartial decisionmaker is required to determine whether the portion of UAW expenditures claimed as chargeable amounts were in fact expended on matters related to the costs of exclusive representation. Anytime the amount of the service fee is challenged there is the possible consequence that the impartial decisionmaker may find that the UAW either correctly determined the chargeable amounts or that the UAW set the chargeable amount at a percentage that was too high or too low. The Court concludes that the UAW's reservation of the right to argue that the chargeable percentage set in the Report is justified and does not unconstitutionally discourage meaningful objections.

■ Plaintiffs next challenge the UAW's requirement that the nonmember "state the basis of the claim." The main question raised is whether a nonmember would know how to effectively object after reading the objection policy. The Court finds that the UAW's procedure meets this requirement. The potential objectors are not required to make ideological objections to the expenditures themselves. In fact, requiring an objector to state the basis of the claim may add to the efficiency to the proceedings by helping to focus the issues presented. The Court concludes that this requirement is not an unrealistic or excessively complex procedural requirement as long as the UAW implements it in good faith.

■ Finally, plaintiffs challenge the New Policy provision allowing for a final and binding arbitration decision. However, a final and binding decision within the framework of the objection policy does not preclude access to the courts. As noted in *Hudson*, an arbitrator's decision is not given preclusive effect in any subsequent Section 1983 action. *Hudson*, 475 U.S. at 308 n. 21, 106 S.Ct. at 1077 n. 21. Thus the Court concludes that the "final and binding" provision is not constitutionally defective.

---

**7.** A footnote on page 7 of the Report indicates that "[t]he UAW reserves the right to charge nonmember agency fee payers an amount reflecting either in whole or in part the activities performed ... which have not been charged herein, ... in the event that any aspect of this Report is challenged pursuant to the [New Policy].

## INDEMNIFICATION

Plaintiffs also challenge the validity of the indemnification clause in the 1988–1990 collective bargaining agreement between Local 6000 and the State,[8] alleging that it is void and unenforceable based on public policy. Plaintiffs argue that the clause "causes the State defendants to ignore consideration of whether the deduction of service fees violates the constitutional rights of their employees, especially nonunion employees...."

The State refutes plaintiffs' challenge, arguing that by "refusing to allow unions to indemnify public employers for damages or attorney's fees the public employer incurs enforcing the agency shop clause may lessen the chance the public employer will enforce any agency shop clause. This may cause labor unrest and defeat the very purpose for the clause."

▮] Initially, the Court notes that the State bargained for this indemnification in the collective bargaining process. "It is a basic tenet of national labor policy that 'when neither the collective-bargaining process nor its end product violate[ ] any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract.' " *Bowen v. United States Postal Service,* 459 U.S. 212, 241, 103 S.Ct. 588, 604, 74 L.Ed.2d 402 (1982) (White, J., concurring) (citations omitted).

Plaintiff has not pointed out and the Court does not find any direct command of Congress allowing a modification of the collective bargaining agreement in this case. Thus, this Court declines to accept plaintiffs' challenge to the constitutionality of the indemnification clause, neither rejecting the validity of plaintiffs' arguments nor accepting those of defendants. This Court recognizes the concerns raised by plaintiffs' challenge to the indemnification provision and notes that this is a question of policy with far-reaching implications.

This Court refuses to upset stability in labor relations and cause the potential for disruption within Congress' comprehensive labor scheme.

## CONCLUSION

Before a nonmember may be obligated to contribute service fees, a constitutionally adequate plan must be established and operating. *Tierney,* 824 F.2d at 1504. This Court concludes that the UAW's procedures regarding information provided to the nonmembers as well as the role of the independent auditor under those procedures are consistent with the basic constitutional requirements of *Hudson.* In addition, the Court concludes that the objection policy meets constitutional requirements. However, the Court also concludes that a potential objector is entitled to know the expenditures of his local union, or at least that the local presumption used does have a basis in fact. Thus, the Court concludes that in this respect the New Policy does not comport with the dictates of the Constitution.

Accordingly, the defendant UAW shall present evidence by December 8, 1988 that procedures have been established consistent with this Opinion; otherwise, a permanent injunction will issue enjoining the defendants from implementing the Agency Fee Payer Objection Policy.

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

At a session of the Court held in and for said District and Division, in the City of Grand Rapids, Michigan, this 12th day of January, 1989.

On December 8, 1988, the Court extended its preliminary injunction in this matter until January 13, 1989. Since the extension, the Court has had the opportunity to receive and review defendant UAW's supplemental memorandum and declarations submitted in support thereof, plaintiffs' op-

---

**8.** Article 6, section G of the collective bargaining agreement provides:

    The union shall indemnify and save the Employer harmless against any and all claims, demands, suits, or other forms of lia-

bility which may arise out of any action taken or not taken by the Employer for the purpose of complying with the provisions of this Article.

position to the supplemental memorandum, defendants' reply, and plaintiffs' final response.

Defendant UAW has provided evidence to the Court which does suggest that the local presumption used by the UAW when calculating the amount of chargeable agency fees owed by Local 6000 nonunion members does have a basis in fact for the year 1987. However, such evidence does not assure that in ensuing years the local presumption will also be valid as applied to Local 6000. Moreover, the UAW's Agency Fee Payer Objection Policy as now written does not provide nonmember agency fee payers who are potential objectors with any way to determine whether the local presumption is reliable as applied to Local 6000. As the Court stated in its November 15, 1988 Opinion, "[p]otential objectors should not be required to have blind faith in the UAW's unverified unilateral decision that the local union presumption is in fact an accurate presumption." Based on the materials sent to nonmembers annually, potential objectors have no way to determine whether an objection to the amount of chargeable fees is worth pursuing. As a result, the Court concludes that the UAW's use of the local presumption still fails to meet the precision required by *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), *Tierney v. Toledo*, 824 F.2d 1497, 1502 (6th Cir.1987), and *Damiano v. Matish*, 830 F.2d 1363 (6th Cir.1987). The Court leaves to the UAW the responsibility of devising a plan consistent with the Court's Opinions which, when implemented, will provide information ensuring the reliability of the local presumption to nonmembers on an annual basis.

Accordingly, IT IS HEREBY ORDERED that the Court will retain jurisdiction of this matter and the present preliminary injunction will be continued until an Order is issued otherwise.

IT IS FURTHER ORDERED that defendant UAW shall have until February 27, 1989, to submit a plan which is consistent with the Court's Opinions. Plaintiffs shall have until March 27, 1989 to file a response to such proposed plan.

IT IS SO ORDERED.

## APPENDIX
### AGENCY FEE PAYER OBJECTION POLICY

International Union, UAW ("UAW") has approved the following Policy governing objections by UAW-represented public employee nonmember agency fee payers to expenditure of their Service Fees for purposes not related to the costs of exclusive representation.

1. The Service Fee chargeable to nonmember agency fee payers in the unit(s) to which this Policy applies shall be an amount determined in accordance with this Policy. Such amount shall be calculated as a percentage of the union dues and fees uniformly charged as membership dues for UAW members in the same bargaining unit.

2. The UAW's fiscal year is the calendar year. The UAW's Fee Year shall run from July 1 to July 1 of the following calendar year.

3. At the end of each fiscal year, the UAW's expenditures shall be reviewed in order to establish, on a pro rata basis, what portion of UAW expenditures were expended on matters related to the costs of exclusive representation (the "Chargeable Amount"). The International Union, UAW will then prepare, by the 15th of May following the close of each fiscal year, a report setting forth the results of this review with respect to that previous fiscal year (the "Report"). The methods of determining the Chargeable Amount and the allocation of UAW expenditures contained in the Report will be verified by a Certified Public Accountant. Such Report will thereafter be mailed by the UAW to the last known address of each nonmember agency fee payer to which this Policy applies.

4. Each July 1, the Service Fee charged to nonmember agency fee payers will be determined for the Fee Year commencing on that day. The Service Fee so charged will be equal to that portion of union dues

determined to be the Chargeable Amount as described in Paragraph 3 of this Policy.

5. Any nonmember agency fee payer who claims that the Chargeable Amount determined in the Report was not properly calculated or was not in accordance with the standard set forth in Paragraph 3 of this Policy may object to the UAW's determination of the Chargeable Amount reflected in the Report. Such an objection shall be commenced by filing such objection in writing with: Agency Fee Payer Objection Administration, International Union, UAW, 8000 E. Jefferson, Detroit, Michigan 48214. Any such objection must be filed no later that the 30th day of June following issuance of the Report required by Paragraph 3 of this Policy. The objection shall state the basis for the claim that the Chargeable Amount as set forth in the Report is not in accord with the standard set forth in Paragraph 3 of this Policy.

6. All objections filed pursuant to Paragraph 5 of this Policy will be referred to an impartial decisionmaker. Until further notice, all such appeals shall be referred by the UAW to the American Arbitration Association ("AAA"), pursuant to its "Rules for Impartial Determination of Union Fees effective June 1, 1986." The UAW will have the authority to have any or all such appeals consolidated before the impartial decisionmaker selected by the AAA. The impartial decisionmaker shall issue his or her determination as to the appeals within 60 days of the filing of the last appeal so consolidated. The impartial decisionmaker's jurisdiction shall be limited to determining whether the Chargeable Amount determined by the UAW with respect to the appellants is in accord with the standard set forth in Paragraph 3 of this Policy. The determination of the impartial decisionmaker shall be final and binding.

7. Immediately upon receiving any objection pursuant to Paragraph 5 of this Policy, the UAW will deposit an amount of money equal to the Service Fees to be charged during that Fee Year to the objecting nonmember agency fee payer in an interest-bearing escrow account maintained by Comerica Bank. Money so deposited will remain in the escrow account and will not be made available for the UAW for any use until distribution in accordance with the determination of the impartial decisionmaker as described in Paragraph 6.

8. For the purposes of this Policy, "file", "filing", and/or "filed" means receipt by the recipient designated herein, after mailing by first class mail.

9. UAW reserves the right to further amend or modify this Policy, as it deems appropriate, to comply with then-applicable law, or to terminate this Policy, if permitted by then-applicable law.